Lorraine NELSON et al.

v.

Maine TIMES.

Supreme Judicial Court of Maine.

June 3, 1977.

Kenneth C. Thompson, Old Town, for plaintiffs.

Preti & Flaherty by David M. Cohen, Peter H. Rysman, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK and ARCHIBALD, JJ.

* WEATHERBEE, J., sat at argument and participated in consultation but died prior to preparation of opinion.

1. We learn from appellants' brief and by concession at oral argument that the picture in question was obtained from a recently publish-

ARCHIBALD, Justice.

The plaintiffs have appealed from a Superior Court ruling granting the defendant's motion to dismiss their complaint for "failure to state a claim upon which relief can be granted". Rule 12(b)(6), M.R.C.P.

We deny the appeals.

The plaintiffs, mother and minor son, are both described in the complaint as "members of the Penobscot Tribe of Indians and reside on the Penobscot Tribal Indian Reservation, Indian Island, Old Town."

The defendant is a newspaper published and circulated within the State of Maine, including the area of the State in which the plaintiffs live.

On February 16, 1973, the defendant published a picture of the infant plaintiff. This was done "without his consent or authorization or the consent or authorization of his mother."[1]

The infant plaintiff contends that the publication of this photograph "invaded the seclusion of his private life and exploited his likeness and his heritage as a member of the Penobscot Nation or Tribe of Indians." He sought both compensatory and punitive damages.

Mrs. Nelson sought compensatory damages for her "mental suffering and humiliation" since the "unauthorized use of her son's picture . . . outraged and shocked her, she being a woman of ordinary sensibilities."

We have frequently stated our reservations surrounding the use of 12(b)(6) motions. See Ace Ambulance Service, Inc. v. City of Augusta, 337 A.2d 661, 662 (Me. 1975); Jones v. Billings, 289 A.2d 39, 40–41 (Me.1972); Richards v. Ellis, 233 A.2d 37, 38 (Me.1967). We would have serious doubts concerning the accuracy of the ruling, considering the theoretical amendability of the

ed book, "Glooskap's Children, Encounters with the Penobscot Indians of Maine" by Peter Anastas, which was published by Beacon Press in 1973, and which was being reviewed in the Maine Times. Neither the author nor Beacon Press was joined in this action.

infant plaintiff's complaint, were it not for the fact that at oral argument it was agreed by plaintiffs' counsel that the complaint could not be amended in any substantial manner to allege facts other than those recited therein. Furthermore, both counsel concurred that Rule 12(b)(6) was an appropriate vehicle to raise the issue sought to be determined. Neither brief suggests otherwise.

We now turn to the merits of the appeals.

In the recent case of *Estate of Berthiaume v. Pratt, M.D.*, 365 A.2d 792, 795–96 (Me.1976), we recognized for the first time four kinds of interests, the invasion of which may give rise to a tort action for breach of another person's right to privacy. Although enumerated otherwise in *Berthiaume*, we restate these interests as set forth more recently in Restatement (Second), Torts § 652A at 376:[2]

"(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

(2) The right of privacy is invaded by

(a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or

(b) appropriation of the other's name or likeness, as stated in § 652C; or

(c) unreasonable publicity given to the other's private life, as stated in § 652D; or

(d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E."

We view the infant plaintiff's complaint as an attempt to state a cause of action under three of the four grounds set forth above, which we will discuss separately.

## I

*An Intrusion Upon the Seclusion of Another*

Restatement (Second), Torts § 652B provides:

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

■ In *Berthiaume* we recognized that it is an actionable tort to make an unauthorized *intrusion* upon a person's physical or mental solitude or seclusion. This concept requires proof of an actual invasion of "something secret, secluded or private pertaining to the plaintiff". *Id.* 365 A.2d at 795. It is not alleged that Maine Times physically intruded upon the plaintiff's "solitude or seclusion."

In *Berthiaume* the defendant made an uninvited entry into the hospital room of a dying person for the express purpose of taking unauthorized photographs, facts which are easily distinguishable from those now before us.

As is made clear by the comments and illustrations in Restatement (Second) of Torts, at 378–80, a complaint should minimally allege a physical intrusion upon premises occupied privately by a plaintiff for purposes of seclusion. *See Froelich v. Werbin*, 219 Kan. 461, 548 P.2d 482, 485 (1976). This complaint makes no such allegation.

Additionally, there is no averment that the publication of the picture was at all offensive to the plaintiff, although this segment of the tort clearly requires proof that the invasion be highly offensive to the ordinary reasonable man. *See* Restatement, *supra*, comment d at 380.

## II

*An Appropriation of Another's Likeness*

Restatement (Second), Torts § 652C provides:

**2.** This section was adopted and promulgated by the American Law Institute on May 19, 1976, published in early 1977 and, although adopted after his death, represented in good part the

work product of Dean William L. Prosser, who was quoted at length in *Berthiaume, supra. See* Introduction to Restatement, *supra*, at VII, VIII.

"One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."

Was this admitted publication for the purpose of appropriating benefits associated with the picture of the infant plaintiff by the Maine Times? *See, e. g., Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224, 351 N.E.2d 454, 458 (1976). We do have the benefit of the photograph. It depicts the face and upper body of an obviously young person set against a pastoral background.[3] The photograph shows no abnormality and suggests a young boy who appears to be content with his environment. Undoubtedly it could suggest to the viewer that the young lad was of Indian ancestry and it is so alleged.

We feel that these facts do not bring this publication within the ambit of Section 652C.

The protection afforded by the law to this right relates to ordinary sensibilities and cannot extend to "supersensitiveness or agoraphobia." *Cason v. Baskin*, 155 Fla. 198, 20 So.2d 243, 251 (1945). It seems to be generally held that if a person reasonably constituted could anticipate that such an appropriation could cause mental distress and injury to another who was possessed of ordinary feelings and intelligence, such an appropriation would be tortious.

Additionally, the appropriation must benefit the tortfeasor. This photograph was published on page 13 of the particular issue in conjunction with a book review. Restatement (Second), Torts § 652C, comment d, seems to resolve this issue, namely:

"d. *Incidental use of name or likeness.* The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. *The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.*" (emphasis supplied)

*See Neff v. Time, Inc.*, 406 F.Supp. 858, 861 (W.D.Pa.1976).

The infant plaintiff relies heavily on *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 50 S.E. 68 (1905), a case where the defendant had caused a newspaper advertisement to be published containing a photograph of the plaintiff who was depicted therein as urging the purchase of life insurance from the defendant. The plaintiff's likeness was compared with another "ill-dressed and sickly looking person" who had not had the forethought (so the advertisement states), as had the plaintiff, to buy life insurance from the defendant. In *Pavesich* the photograph was unauthorized, the quotation was not only fabricated but false since the plaintiff had no life insurance with the defendant. The advertisement, by soliciting sales, was of direct pecuniary benefit to the defendant. Furthermore, the newspaper which printed the advertisement was not made a party. Thus, the only similarity between the holding there and the instant case is the unauthorized use of the photograph.

The cases are readily distinguishable.

---

**3.** Since it is alleged that the plaintiff resides on "Indian Island" in Old Town, Maine, it could well be that the scenic background is of the Penobscot River.

## III

### Publicity Given to Private Life

Restatement (Second), Torts § 652D provides:

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

(a) would be highly offensive to a reasonable person, and

(b) is not of legitimate concern to the public."

■ Merely exposing a person to undesired publicity is insufficient per se to constitute a tort even though the exposure was unauthorized. Conjoined with the exposure, publicity must be given to matters concerning the *private*, as opposed to the *public*, life of the person involved. Certainly it could not be argued that a person's normal facial appearance is of private concern only. Persons who might see this infant plaintiff would learn as much about him as they would by observing his published picture. In short, the publication disclosed nothing about the private life of this infant plaintiff that was unknown to anyone who might see him. A person's facial appearance is exposed to the public eye. The publication of the smiling face of a young boy of Indian origin set against a background of woods and water disclosed nothing otherwise not available to the public.

We note, of course, that there is no allegation that this particular photograph was "highly offensive" to the infant plaintiff.

### SUMMARY

We conclude that the infant plaintiff has not alleged a recognizable cause of action and, therefore, the Justice below acted properly in granting the 12(b)(6) motion.

### Mrs. Nelson's Cause of Action

■ Mrs. Nelson, although citing no supportive authority, seems to assume that the defendant's unauthorized publication of her son's photograph gave her a cause of action. We do not agree.

Restatement (Second), Torts § 652I, places limitations on actions for violating the right to privacy, namely:

"Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded." [4]

Section 652I is in accord with general decisional law which holds this tort to be purely personal. In the context of this particular tort courts, being wary of spurious claims or those purely emotional in character, have refused to recognize such actions. Additionally, if actions for violating the right of privacy were allowed by other than the person directly involved, fixing their boundaries and parameters would become an almost impossible task. For example, within what degree of relationship, if any, must a prospective plaintiff be? Might not a very close friend have as serious an emotional reaction as a mother or father? The consensus seems to be that limiting the action to the person directly involved is a sounder judicial policy. We agree. *See Cordell v. Detective Publications, Inc.*, 419 F.2d 989 (6th Cir. 1969); *Kelley v. Post Publishing Co.*, 327 Mass. 275, 98 N.E.2d 286, 287 (1951).

Since Mrs. Nelson's personal privacy was not invaded by the unauthorized publication of her son's photograph, she has no cognizable cause of action against the Maine Times.

The entry is:

Appeals denied.

All Justices concur.

DELAHANTY, J., did not sit.

---

4. In many jurisdictions this action does not survive. However, in Maine, 18 M.R.S.A. § 2501, provides that "[n]o personal action or cause of action shall be lost by the death of either party, but the same shall survive for and against the executor or administrator of the deceased". *See Estate of Berthiaume v. Pratt, M.D., supra*, 365 A.2d at 793 n.1.