Henry DEMPSEY, Plaintiff

v.

The NATIONAL ENQUIRER, INC., et al., Defendants.

Civ. No. 88–0106–P.

United States District Court,
D. Maine.

June 28, 1988.

William Robitzek, Berman, Simmons & Goldberg, Lewiston, Me., for Henry Dempsey.

Ralph I. Lancaster, Pierce, Atwood, Portland, Me., and Gerson A. Zweifach, Laura P. Masurovsky, Williams & Connolly, Washington, D.C., for Nat. Enquirer.

John W. Bernotavicz, Curtis Thaxter Stevens Broder & Micoleau, Portland, Me., and Neal M. Goldman, Squadron, Ellenoff, Plesent & Lehrer, New York City, for News America.

## MEMORANDUM OF DECISION AND ORDER GRANTING THE DEFENDANT NATIONAL ENQUIRER'S MOTION TO DISMISS

GENE CARTER, District Judge.

In September, 1987, the plaintiff fell out of the door hatch of a small commercial airplane as it was in flight over Casco Bay, Maine, managed to grasp and cling to the door rails on the underbody of the plane for 10 minutes, and survived his co-pilot's emergency landing with only a minor injury. Many newspapers and news services reported the event. The complaint alleges that two particular articles, published in the *National Enquirer* and the *Star*, respectively, invaded the plaintiff's right to privacy by placing him in a false light and by appropriating his likeness and words for commercial profit. Before the court is the defendant *National Enquirer*'s motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6).

In the Amended Complaint,[1] the plaintiff alleges that although the *National En-*

---

1. The plaintiff moved to amend his complaint under Fed.R.Civ.P. 15(a) "to make his allegations against the defendants clearer and to clear any technical deficiencies which may exist." The amended complaint adds detailed allegations in support of his claim of invasion of

*quirer* neither interviewed nor obtained information from him concerning his unique method of flight, the article appeared in the *National Enquirer* replete with quoted statements and thoughts ascribed to the plaintiff but which the plaintiff had not made or thought. The plaintiff further alleges that he had not authorized or consented to publication of the story or the accompanying photograph, and that as a result of the publication he suffered mental distress, public humiliation and embarrassment for which he seeks compensatory and punitive damages.

■ The preliminary question for the court is the appropriateness of treating a "false light" claim in a motion to dismiss. The plaintiff argues that this claim requires a factual determination which is for the jury, not the court, to make.

In Maine, a "false light" claim of invasion of privacy is a common law, not a statutory, cause of action.[2] The elements of this cause of action are set forth in *Nelson v. Times*, 373 A.2d 1221, 1223–24 (Me.1977), which explicitly adopted the *Restatement (Second) of Torts* § 652A requirements. Under the *Restatement*, as adopted in Maine, the right of privacy is invaded, in relevant part, by publicity that places another person in a false light which would be highly offensive to a reasonable person, when the publisher had knowledge of or acted in reckless disregard as to the falsity of the publication and the false light in which the individual would be placed. *Restatement, supra*, § 652E.

The First Circuit has recently addressed the issue of whether a false light claim may be decided in a motion to dismiss. In *Fudge v. Penthouse International, Ltd.*, 840 F.2d 1012 (1st Cir.1988), the court upheld a Rhode Island District Court's dismissal of such a claim, ruling that the District Court did not err in making the threshold determination regarding whether a statement was capable of implying the kind of objectionable association required under a Rhode Island "false light" statute. The *Fudge* plaintiffs had alleged a statutory invasion of privacy based on the publication in *Penthouse*, a sexually explicit magazine, of a photograph of the plaintiffs and an article regarding segregated public elementary school recesses. The *Fudge* court first noted the lack of interpretive state precedent applicable to the state statute, and the widely recognized analogy between the common law actions for portrayal in a false light and for defamation. Since "the [defamation] rule in Rhode Island and elsewhere [is] that 'the threshold determination of whether a statement is capable of bearing a defamatory meaning is for the court to decide....' *Healey v. New England Newspapers, Inc.*, 520 A.2d 147, 150 (R.I. 1987) (citing *Restatement (Second) of Torts* § 614)," the First Circuit reasoned that the Rhode Island courts would apply a similar rule in a false light context.

> Such a rule would serve the same salutory purposes as it does in the defamation context. Indeed, the *Restatement* explicitly suggests that some of the same restrictions applicable to defamation claims may also be applicable to false light claims. *Restatement (Second) of Torts* § 652E, comment e.
>
> ....
>
> We note that a number of other courts have concluded that the court should make a threshold determination of whether the statement is capable of portraying the plaintiff in a false light. *See Braun v. Flynt*, 726 F.2d 245, 253 (5th Cir.) (applying Texas law), *cert. denied*, 469 U.S. 883 [105 S.Ct. 252, 83 L.Ed.2d 189], ... (1984); *Cibenko v. Worth Publishers, Inc.*, 510 F.Supp. 761, 766 (D.N.J.

privacy but adds no new causes of action. The record lacks any evidence of a reason "such as undue delay, bad faith or dilatory motive ..., repeated failure to cure ..., undue prejudice ..., or futility of amendment," which would support denial, and the motion to amend has therefore been granted. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

**2.** Maine recognizes the tort of invasion of privacy and has set forth four distinct interests protected by the right of privacy, two of which are appropriation of another's name or likeness, and publicity which places another in a false light. *See Nelson v. Maine Times*, 373 A.2d 1221, 1223 (Me.1977).

1981) (applying New Jersey law); *Fogel v. Forbes, Inc.*, 500 F.Supp. 1081, 1088 (E.D.Pa.1980) (applying Pennsylvania law).

*Fudge*, 1018–19. Thus, although the false light claim in *Fudge* had been based on a state statute, the First Circuit ruling on this issue clearly rests on *Restatement* principles, principles which have been adopted in Maine. The court concludes, therefore, that *Fudge* controls and that this court may make a similar threshold determination in this case.[3]

■ On the merits of the false light claims, therefore, the issue is whether the portions of the *National Enquirer* article which the plaintiff alleges to be false could as a matter of law be viewed as highly offensive to a reasonable person. The plaintiff specifically alleges that all portions of the article which represent his quoted statements or his thoughts were false; the defendant does not controvert the falsity of these portions of the article but characterizes them as "minor inaccuracies" or "fictionalized dialogue" which do not meet the *Restatement*'s requirement of "a major misrepresentation of [an individual's] character, history, activities or beliefs [such] that serious offense may reasonably be expected to be taken by a reasonable man in his position." *Restatement (Second) of Torts* § 652E, comment c.

The article itself bears the familiar stamp of tabloid news.[4] There are approximately 33 short paragraphs, and 21 of those represent what is indicated to be quoted material. Those quoted statements concern the physical sensations, thoughts and fears supposedly experienced by the plaintiff during the time he was clinging to the door rails of the plane, and during the emergency landing.

In *Fudge v. Penthouse International, Ltd.*, 840 F.2d 1012 (1st Cir.1988),[5] the plaintiffs, four schoolgirls aged 8–12, alleged in relevant part that the article implied that the girls were masculine in nature and wished to dominate their male schoolmates and that that was the reason their school instituted sexually segregated recesses. The First Circuit concluded that these allegations, even if true, would not as a matter of law, " 'be objectionable to the ordinary reasonable man under the circumstances.' " *Fudge*, at 1019, citing the relevant portion of the Rhode Island statute. The *Fudge* plaintiffs also alleged that the article implied that they had consented to publication and endorsed *Penthouse*'s editorial views, but the court found that because the news item and photograph were attributed to another news source it would be unreasonable to infer that *Penthouse* had obtained the story directly from the plaintiffs. *Id.*, n. 4.

---

**3.** It is to be noted that in *Nelson v. Maine Times*, 373 A.2d 1221 (Me.1977) (an invasion of privacy claim), the court expressed "reservations surrounding the use of 12(b)(6) motions," based on "the theoretical amendability of the infant plaintiff's complaint" in that case. The court proceeded to review the Superior Court's order of dismissal, however, based on the agreement of counsel that Rule 12(b)(6) was the appropriate vehicle. The court is also aware that in *Strickler v. National Broadcasting Co.*, 167 F.Supp. 68 (S.D.Cal.1958), the court denied a motion to dismiss based on allegations and a factual scenario similar to those in the case now before this court. The *Strickler* plaintiff had been involved in an emergency airplane landing which was subsequently dramatized in a television show. The plaintiff alleged invasion of privacy based on depiction of the plaintiff in the act of praying, out of uniform, as a smoker, and as an inadequate assistant in the emergency landing. The California District Court concluded that resolution of the motion to dismiss required resolution of a question of fact, *i.e.,* whether an

individual of ordinary sensibility would find such misrepresentations highly offensive. It is clear, however, that *Nelson* does not establish any general principle regarding the inappropriateness of deciding invasion of privacy claims on Rule 12(b)(6) motions. Obviously, neither *Nelson* nor *Strickler* controls this issue since each predates the explicit holding in *Fudge, supra.*

The court further notes that in this case the plaintiff has been permitted to amend his complaint.

**4.** Attached to the defendant *National Enquirer*'s memorandum in support of its motion for summary judgment is the *National Enquirer* article. There appears to be no dispute regarding either the content of the article or the underlying events which formed the basis of the article.

**5.** There is no Maine case which specifically tests the offensiveness of a publication in a false light invasion of privacy claim.

The *Restatement*'s requirement that any false statement be "highly objectionable to a reasonable person," which controls in Maine, is substantially similar to the test in *Fudge* under the Rhode Island statute. The alleged offensive implication in *Fudge* certainly comes closer to misrepresentation of an individual's character (*Restatement, supra,* comment c) than does the mere description of physical sensations and predictable fears which might be experienced by an individual who falls out of an airplane while in flight. The court finds as a matter of law that the complaint has not alleged misrepresentations which would be highly objectionable to a reasonable person and concludes, therefore, that the claim of invasion of privacy based on a publication which placed the plaintiff in a false light should be dismissed.[6]

■ The plaintiff has also alleged that his privacy was invaded by the *National Enquirer*'s appropriation of his likeness and words for commercial profit, and not for the purpose of relating to the public a newsworthy event. Amended Complaint ¶ 8. In Maine, an invasion of privacy claim based upon appropriation of another's image or words follows *Restatement* principles set forth in § 652C. In *Nelson v. Maine Times,* 373 A.2d 1221 (Me.1977), the Law Court upheld the dismissal of such a claim, relying on comment d of § 652C, which states in part:

> The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.

This language resolves the issue in this case, especially in the absence of any allegation that the defendant attempted to use the plaintiff's likeness and words for commercial endorsement of a product. Therefore, the plaintiff's claim based on commercial appropriation must be dismissed.

Accordingly, I hereby *ORDER* that the claims against the defendant *National Enquirer* be *DISMISSED* under Fed.R.Civ.P. 12(b)(6).[7]

---

6. The court notes the defendant's request for oral argument on this motion but finds it moot since the motion is resolved in the defendant's favor.

7. Still outstanding is the plaintiff's claim against the co-defendant News America Publishing, Inc.