STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
Docket No. CV-01-170

Barbara A. Clark,
      Plaintiff      )

    v.          )   **ORDER**

Paul B. Means et al.,
      Defendants    )

FILED AND ENTERED
SUPERIOR COURT

JAN 15 2002

PENOBSCOT COUNTY

Pending before the court is the defendant Paul B. Means' (Means) motion to dismiss some (but not all) of the plaintiff's claims.[1] In his motion, Means contends that the plaintiff's allegations of misconduct in the workplace cannot provide the basis for relief because of the immunity and exclusivity provisions of the Workers' Compensation Act (WCA).

In her complaint, the plaintiff alleges that she was employed by defendant Means Investment, Co., Inc., and that Means himself was her supervisor and the sole owner and president of the company. She further alleges during the period of her employment, Means made sexually suggestive comments to her and made inappropriate physical contact with her. She also alleges that Means engaged in other actionable conduct when she was at home or places other than the worksite. On the basis of these and further allegations, she has made claims for invasion of privacy (count 1), unintentional infliction of emotional distress (count 2), and intentional

---

[1] The movant's counsel also represents co-defendant Means Investment Co., Inc. The motion at bar, however, is made by defendant Paul B. Means only.

1

infliction of emotional distress (count 3).[2] Means argues that those portions of the three tort claims that arise from conduct occurring in the workplace are barred by the combined effects of 39-A M.R.S.A. § 104 (providing immunity to employers against employees' civil claims arising out of and in the course of employment) and 39-A M.R.S.A. § 408 (providing for a waiver of common law civil claims by employees who have secured worker's compensation benefits).

"A motion to dismiss tests the legal sufficiency of the complaint." *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994). On a motion to dismiss, the complaint must be examined "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* A dismissal is proper "only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Hall v. Board of Environmental Protection*, 498 A.2d 260, 266 (Me. 1985).

Here, Means' motion to dismiss is fatally plagued by two problems. First, section 104 provides immunity to "[a]n employer who has secured the payment of" worker's compensation benefits for the employee, and section 408 operates to bar the claims of an employee whose employer "has secured the payment of" worker's compensation benefits. Here, the complaint does not establish either of these predicates to immunity and waiver.

Second, even if statutory provisions are applicable because of the

---

[2] She has also made a claim for unpaid wages (count 4). This cause of action is not implicated by the present motion.

payment of benefits to the plaintiff and her receipt of them, then the factually driven analysis generated by those statutes nonetheless precludes the dismissal of the common law tort claims. In *Knox v. Combined Insurance Co. of America*, 542 A.2d 363, 366 (Me. 1988), the Law Court held that the applicability of the WCA is a function of "factual findings that we as an appellate court are ill-suited to make. . . .There may be no 'correct conclusion' as to the applicability of the Act and different factfinders may decide similar cases differently." Therefore, after the trial court ruled that as a matter of law an employee's claim arising from sexual assaults was not barred by the WCA, the Law Court remanded the case for factfinding. *Id.* at 367.

Similarly, in *Cole v. Chandler*, 2000 ME 104, ¶ 14, 752 A.2d 1189, 1196, the Court reiterated that the question of coverage under the WCA "turns on an issue of fact." In *Cole*, the Law Court examined an order on summary judgment entered in the trial court. This points to the need for a factual development of the claim before the application of the WCA can be assessed properly. *See also Hawkes v. Commercial Union Ins. Co.*, 2001 ME 8, ¶¶ 7-14, 764 A.2d 258, 263-65 (examination of application WCA to common law tort claims, after defendant's motion for summary judgment had been denied).

The substantive determination of whether a defendant is immunized from civil liability under the WCA turns on an wide examination of factors. *See, e.g., Comeau v. Maine Coastal Services*, 449 A.2d 362, 367 (Me. 1982). The plaintiff's complaint cannot fairly be treated as a comprehensive rendition of all of the circumstances that might be relevant to Means' substantive argument here. A pleading is not required to provide that

3

level of factual detail, either in scope or depth. Therefore, in the present posture of this case, the court cannot conclude that the complaint forecloses the possibility of relief.

The entry will be:

For the foregoing reasons, defendant Paul B. Means' motion to dismiss is denied.

Dated: January 14, 2002

_____
JUSTICE, SUPERIOR COURT

4

Date Filed __9/5/01__  _____Penobscot_____  Docket No. __CV-2001-170__
                                County

Action __Civil - Damages__

**ASSIGNED TO JUSTICE JEFFREY L. HJELM**

|  |  |  |
|---|---|---|
| BARBARA A. CLARK | vs. | PAUL B. MEANS and<br>MEANS INVESTMENT CO., INC. |

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| BABER & WEEKS<br>Hancock Place<br>304 Hancock St Suite 2E<br>Bangor ME  04401<br>BY:  Paul A. Weeks, Esq. | RUDMAN & WINCHELL, LLC<br>84 HARLOW STREET<br>P O BOX 1401<br>BANGOR ME  04402-1401<br>By:  Paul W. Chaiken, Esq. |

| Date of Entry | |
|---|---|
| 9/5/01 | Complaint filed.   Jury Trial fee of $300.00 paid. |

STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-01-170

Barbara A. Clark,
　　　Plaintiff

v.

Order (Defendants' Motion for
Summary Judgment)

Paul B. Means et al.,
　　　Defendants

DONALD L. GARBRECHT
LAW LIBRARY

MAY 6 2003

FILED & ENTERED
SUPERIOR COURT

APR 22 2003

PENOBSCOT COUNTY

Pending before the court is the defendants' motion for partial summary judgment. The court has considered the submissions filed by the parties in association with the motion at bar.

The record on summary judgment reveals that between 1980 and 1988, and then again between 1990 until 1998, the plaintiff was an employee of defendant Means Investment Co., Inc. (MIC). At least presently, defendant Paul B. Means (Means) is the president, treasurer and a majority shareholder of MIC. During the entire time of the plaintiff's employment with MIC, MIC had workers' compensation insurance coverage, which provided that coverage for the plaintiff. There is competent evidence in the present record to support factual contentions that while she was present in the workplace, Means put his hand between the plaintiff's legs and under her skirt while she was standing next to Means and holding papers that he was to sign, Defendants' Statement of Material Fact (DSMF) ¶¶ 10-11, Plaintiff's Opposing Statement of Material Fact (POSMF) ¶ 10; that at the workplace, in the plaintiff's presence Means was involved in a conversation about sexual issues, DSMF ¶¶ 22-23; that at the workplace Means commonly would lean his body up against her, id., ¶¶ 24-25; that Means would repeatedly "chant" her name and "sexually suggestive phrases about her" in the workplace, id., ¶¶ 26-27; that he made sexually suggestive comments to her while she was seated at her desk at work, id. ¶ 28; and that he followed her into the bathroom at

1

work, POSMF ¶ 30; that at work he asked her about the circumstances when she lost her virginity, Plaintiff's Reply Statement of Material Facts (PRSMF) ¶ A7.

The record also establishes a factual claim that outside of the workplace, Means communicated with the plaintiff regarding sexual matters. Some of these conversations also included work-related matters. DSMF ¶ 32. However, the calls included discussions of sexual conduct of other employees of MIC, PRSMF ¶ A6; and during some of those calls, Means asked the plaintiff about her sexual relationship with her husband, *id.*, ¶¶ A12-A13.

On the basis of Means' alleged conduct, the plaintiff has brought claims against him for invasion of privacy (count 1), and "unintentional" and intentional infliction of emotional distress (counts 2 and 3). In those counts, she alleges that she has sustained mental and physical injuries caused by Means' conduct. In the fourth and final count of the complaint, the plaintiff makes a statutory claim against MIC for unpaid wages.

In the motion at bar, Means argues that she is barred from recovering a judgment against him in this forum because he is immunized from civil liability under the statute of limitations and under the immunity and exclusivity provisions of the Maine Workers' Compensation Act, 39-A M.R.S.A. §§ 104, 408. Additionally, MIC seeks summary judgment on the plaintiff's statutory claim for unpaid wages.

Summary judgment is proper only if the record on summary judgment shows that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See* M.R.Civ.P. 56. To survive a motion for a summary judgment, the opposing party must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law; "[t]he plaintiff must establish a *prima facie* case for each element of the cause of action." *Rodrigue v. Rodrigue*, 1997 ME 99, ¶8, 694 A.2d 924, 926. "'A fact is material when it has the potential to affect the outcome of the suit.'" *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 5, 721 A.2d 169, 172. If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, a summary judgment may be granted." *See Green v. Cessna Aircraft Co.*, 673 A.2d 216, 218 (Me. 1996) (citation and internal punctuation omitted).

2

## A. Claims against Means

Means' motion for summary judgment is based on defenses of the statute of limitations and on immunity under the Worker's Compensation Act.

The plaintiff has not argued in opposition to that part of Means' motion based on the statute of limitations. Further, the record on summary judgment allows no factual dispute that several of the incidents underlying the plaintiff's claim occurred more than six years prior to September 5, 2001, which is the date when the plaintiff commenced this action by filing the complaint. *See* M.R.Civ.P. 3(2). Therefore, Means is entitled to judgment on that conduct that occurred prior to September 5, 1995.

Means next contends that he is immunized from civil liability for any allegedly actionable conduct that occurred in the workplace.[1] An employer and its employees, supervisors and officers are "exempt from civil actions. . .involving personal injuries sustained by an employee arising out of and in the course of employment," if the employer has secured the payment of worker's compensation. 39-A M.R.S.A. § 104. This exclusivity provision, limiting the employee's rights of action against the employer and its agents, is to be applied in a "broad and encompassing" way. *Cole v. Chandler*, 2000 ME 104, ¶ 10, 752 A.2d 1189, 1195. It protects an employer and the other prospective defendants identified in section 104 from liability for intentional torts, *Li v. C.N. Brown Co.*, 645 A.2d 606, 608 (Me. 1994), including claims for injuries arising out of alleged sexual harassment and misconduct, *Knox v. Combined Insurance Co. of America*, 542 A.2d 363, 366 (Me. 1988). Thus, the remaining question is whether on this record there is a genuine factual dispute affecting Means' argument that the plaintiff sustained her injuries arising out of and in the course of her employment at MIC.

These elements, when viewed in a consolidated way, provide compensation coverage (and, conversely, employer immunity from civil liability) for "injuries suffered *while* and *because* they [the employees] were at work." *Comeau v. Maine Coastal Services*, 449 A.2d 362, 366 (Me. 1982) (emphasis in original). Although, as the plaintiff notes, the question of an employer's statutory immunity is a question of fact, *see Cole*,

---

[1] He also makes a parenthetical argument that he is immune from liability for any conduct that occurred in other locations. While articulating this argument, he does not press or develop it, perhaps because the record clearly reveals a genuine issue of fact relating to the extent of his immunity outside of workplace conduct.

2000 ME 104, ¶ 14, 752 A.2d at 1196, it also is an issue than can properly be considered in the context of a motion for summary judgment. *See, e.g., Cole, id.,* ¶ 16, 752 A.2d at 1196-97; *Easler,* 1999 ME 140, ¶ 7, 738 A.2d at 839.

An injury arises out of employment where there exists "some causal connection between the conditions under which the employee worked and the injury which arose, or that the injury, in some proximate way, had its origin, its source, its cause in the employment." *Morse v. Laverdiere's Super Drug Store,* 645 A.2d 613, 614 (Me. 1994), *quoted in Easler v. Dodge,* 1999 ME 140, ¶ 6, 738 A.2d 837, 838-39. The "arising out of" inquiry implicates a number of more specific factors. *See Comeau,* 449 A.2d at 367. Here, the record establishes that when Means engaged in the alleged actionable conduct, the plaintiff was at work and performing her employment duties. Therefore, when she was exposed to harm in the workplace, she was fully engaged in work-related activities that were required of her by her employment and that directly benefited her employer. Further, her employer created the condition that she alleges resulted in damage to her. The record does not support a contention that the plaintiff herself was reckless or otherwise created the circumstances that resulted in the alleged harm to her. Finally, at least some of Means' conduct that forms the basis for the plaintiff's claims occurred in the workplace itself. Therefore, each of the enumerated *Comeau* factors weighs entirely in support of Means' argument that the damages sustained by the plaintiff resulting from his conduct in the workplace arose out of her employment there. When her claims against Means are seen in the broader light suggested by *Morse,* the court concludes that as a matter of law those injuries arising out of Means' workplace conduct has their origin, source and cause in her employment. The record does not allow a genuine factual argument to the contrary.

Second, the condition that the injury must be in the "course of employment" is an inquiry that "relate[s] to time, place and circumstances under which the accident takes place. An accident [occurs] in the course of employment when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his or her duties or engaged in doing something incidental thereto." *Northern Security Insurance Co. v. Dolley,* 669 A.2d 1320, 1324 (Me. 1996), *quoted in Easler,* 1999 ME 140, ¶ 5, 738 A.2d at 838. Here, Means' conduct in the workplace is

4

just that: allegedly actionable conduct in which he engaged while both he and the plaintiff were at their mutual place of employment. Further, to the extent revealed by the record, Means committed these acts against the plaintiff during ordinary work hours; the record does not support an argument that Means' conduct at the place of employment occurred at any other time. Finally, the record also shows that at those times when Means acted wrongfully in the workplace, the plaintiff was actually performing her assigned tasks or was doing something incidental, such as using the bathroom. When an employee is injured during even more significant breaks from work, that employee nonetheless sustains that injury in the course of employment. *See Easler*, 1999 ME 140, ¶5, 738 A.2d at 838 (an injury sustained during the plaintiff's "paid on-premises lunch break" occurs in the course of employment). Consequently, the record demonstrates as a matter of law that to the extent that the plaintiff was injured by Means' conduct in their place of employment, those injuries were caused in the course of employment.

The plaintiff contends that because she has sustained special damages in the form of expenses arising from counseling, her injuries go beyond the limitations of personal injuries that are compensable under the Worker's Compensation Act and that, as a result, Means is not immune from civil liability. Mental and physical injuries are compensable. *Cole*, 2000 ME 104, ¶ 13, 752 A.2d at 1196. Economic losses, on the other hand, are not. *Id.* The *Cole* Court equated economic with reputation damages. When seen in this way, counseling expenses are not economic, even though they may constitute special damages. Rather, the Worker's Compensation Act expressly allows an injured employee to receive compensation for out-of-pocket expenses, such as medical bills, that arise directly from an injury that is otherwise compensable. 39-A M.R.S.A. § 209 (payment for health care services under the Act); *see also* 39-A M.R.S.A. § 205(4) (procedure for payment of medical bills). Therefore, counseling expenses are not a form of economic damages that, under *Cole*, would fall outside of the scope of the Worker's Compensation Act and thereby defeat Mean's immunity defense.

For these reasons, the court concludes that Means is immune from civil liability for any conduct that occurred while they were both at the workplace. Any such conduct cannot form the basis for civil liability or damages in this proceeding. Beyond this, at the very least, there exists a genuine issue of material fact regarding Means' acts that

5

occurred outside of the workplace. Thus, Means is entitled to an order of partial summary judgment.

## B. Claim against MIC

The plaintiff has asserted a distinct claim against MIC for unpaid wages and associated relief make available by 26 M.R.S.A. § 626. The defendant moved for summary judgment on that claim, contending that the plaintiff did not make proper demand for unpaid wages. Under section 626, such a demand is a predicate to recovery under the statute. Following that initial filing, the record was clarified to establish that the plaintiff in fact made such a demand. *See* POSMF ¶ 12. Then, in its reply to the plaintiff's opposition, MIC raised a new argument, namely, that it cannot be liable under section 626 when the amount of unpaid wages is disputed. This is an argument that is distinct and different from its original contention. Because MIC did not raise it in its original filing, the plaintiff has been deprived of an opportunity to respond to it, and the argument is not timely. Therefore, the court denies the motion for summary judgment on count 3.

The entry shall be:

For the foregoing reasons, the defendants' motion for summary judgment is granted in part and denied in remaining part. Summary judgment is entered for defendant Paul B. Means on all claims arising from conduct that is alleged to have occurred prior to September 6, 1995, and on all liability and damages claims based on Means' conduct that is alleged to have occurred when the parties were present at their place of employment. Beyond this, the motion is denied.

Dated: April 17, 2003

_____
Justice, Maine Superior Court

6

Date Filed ___9/5/01___     Penobscot     Docket No. ___CV-2001-170___
                                 County

Action ___Civil - Damages___

**ASSIGNED TO JUSTICE JEFFREY L. HJELM**

| | |
|---|---|
| BARBARA A. CLARK | PAUL B. MEANS and<br>VS.   MEANS INVESTMENT CO., INC. |
| Plaintiff's Attorney<br><br>BABER & WEEKS<br>Hancock Place<br>304 Hancock St Suite 2E<br>Bangor ME 04401<br>BY: Paul A. Weeks, Esq. | Defendant's Attorney<br>RUDMAN & WINCHELL, LLC<br>84 HARLOW STREET<br>P O BOX 1401<br>BANGOR ME 04402-1401<br>By: Paul W. Chaiken, Esq. |

| Date of Entry | |
|---|---|
| 9/5/01 | Complaint filed. Jury Trial fee of $300.00 paid. |
| 9/5/01 | Case File Notice Postcard forwarded to Plaintiff's Counsel. |
| 10/2/01 | Acceptance of Service as to both defendants filed. (s.d. 9/20/01 by Paul W. Chaiken, Esq.) |
| 10/5/01 | Defenses and Answer to Complaint filed by Defendant. |
| 10/5/01 | Defendant Means' Motion for Partial Dismissal of Counts I, II, and III of Plaintiff's Complaint Pursuant to Me.R.Civ.P. 12(b)(6) with Incorporated Memorandum of Law filed. |
| 10/5/01 | Request for Hearing on Motion filed by Defendant. |
| 10/12/01 | Scheduling Order (M.R.Civ.P. 16(a) filed. The entry will be: Scheduling Order filed. Discovery deadline is July 1, 2002. (Hjelm, J.) Copy forwarded to all attorneys of record. |
| 10/16/01 | Notification of Discovery Service filed by Defendant: Notice to Take Oral Deposition of Plaintiff, Barbara A. Clark, with Request for Production of Documents. |
| 10/17/01 | Notification of Discovery Service filed by Plaintiff: Notice of Deposition of Paul B. Means on October 30, 2001, Notice of Deposition of Audrey Trafton on October 30, 2001. |
| 10/19/01 | Notification of Discovery Service filed by Defendants: Objection to Request for Documents. |
| 10/22/01 | Notification of Discovery Service filed by Plaintiff: Objection to Request for Production of Documents. |

STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                          CIVIL ACTION
                                        Docket No. CV-01-170

FILED & ENTERED
SUPERIOR COURT
MAY 19 2004
PENOBSCOT COUNTY

Barbara A. Clark,
        Plaintiff


        v.                              Order (Defendants' Motion for
                                        Summary Judgment)

DONALD L. GARBRECHT
LAW LIBRARY

MAY 28 2004

Paul B. Means et al.,
        Defendants


        Defendant Paul B. Means (Means) has moved for summary judgment on the three

counts of the complaint that allege claims against him: count 1 (invasion of privacy);

count 2 (intentional infliction of emotional distress); and count 3 (negligent infliction of

emotional distress). Count 4 of the complaint is directed against co-defendant Means

Investment Co., Inc. and is not implicated in the motion at bar. The court has reviewed

the parties' submissions on Means' motion.

        The record on summary judgment reveals the following facts, which are salient to

the pending motion.[1] Means is the president and treasurer of Means Investment.

Defendant's Statement of Material Fact (DSMF) ¶ 1. Clark worked for Means

Investment between 1990 and 1998, when she voluntarily left her employment. DSMF

¶¶ 5, 6. Between 1986 and 1998, when she separated from Means Investment, Means

telephoned Clark when Clark was at home, at relatives' camp, on vacation and at other

locations. See, e.g., DSMF ¶¶ 32, 50, 54; Plaintiff's Opposing Statement of Material Fact

(POSMF) ¶¶ 3, 4. During some of those conversations, Means asked Clark questions

about her sexual relationship with her husband (POSMF ¶ 12); about her sexual activities

with her husband at the camp (DSMF ¶ 38); about whether she planned to wear a

---

[1] This is the second summary judgment motion filed by Means. The first was resolved by
order dated April 17, 2003. That order imposed limits on the parameters of Clark's
claim because of the effects of the Worker's Compensation Act and of the statute of
limitations. The parties have developed a separate record on the motion at bar, and the
court's references are to the parties' statements of material fact associated on this motion.

1

negligee for her husband (DSMF ¶ 37; POSMF ¶ 13); about her first instance of sexual intercourse (Clark's reply to DSMF ¶ 41); and about oral sex (POSMF ¶ 5). Clark did answer many of Means' questions. *See, e.g.*, DSMF ¶ 42. Although a very small minority of telephone conversations between Means and Clark had some bearing on her employment, nearly all were personal in nature. POSMF ¶ 24. Clark asked Means to stop calling her, POSMF ¶ 34, although she did not ask him to stop calling her at home in particular, DSMF ¶ 46.

The record also supports a factual contention that Means' conduct toward Clark in the workplace had a sexual component. Once, in the presence of other employees, Means put his hands between Clark's legs and up her skirt as he sat at a desk and as she stood beside him. DSMF ¶¶ 8, 9, 11; POSMF ¶¶ 15, 28. More generally, Means frequently touched Clark. POSMF ¶ 8. Means asked her about the circumstances when she lost her virginity. DSMF ¶ 43. He asked her questions about her sex life. DSMF ¶ 39. Means asked her what she thought of having sex with another Means Investment employee. DSMF ¶ 30; POSMF ¶¶ 6. When he asked her this question, she cried in Means' presence. POSMF ¶ 29. And he asked her about oral sex. DSMF ¶ 30; POSMF ¶ 7. She found this question to be "disgusting." Means' reply to POSMF ¶ 7.

Clark left her job with Means Investment in 1998 in order to separate herself from this conduct, which she considered to be abusive and harassing. POSMF ¶ 16. She also had difficulty sleeping. POSMF ¶ 30. As an alleged result, she sought counseling and took medications. POSMF ¶¶ 32, 33.[2]

---

[2] In her opposing statement of material fact, she purports to assert that Means' conduct has some relation to a diagnosed condition of obsessive-compulsive disorder. POSMF ¶ 31. The court must grant Means' motion to strike this assertion, because there is nothing in the record to suggest that Clark is competent to formulate such an opinion. Similarly, the court grants Means' motion to strike POSMF ¶ 1 because she is not qualified to testify about causative issues (although POSMF ¶ 33 is unchallenged, remains part of the record, and generates a factual contention that the counseling itself – as opposed to the counseling expenses, which are addressed in POSMF ¶ 1 -- is causally related to Means' conduct. Finally, POSMF ¶ 18 is stricken without objection.

The motion to strike POSMF ¶¶ 5, 24 and 27 are denied. Means has moved to strike POSMF ¶ 27 because that assertion is not supported by a record reference. Ordinarily, the court would grant a motion to strike on that basis and thereby exclude such unsupported statements from the record. *See* M.R.Civ.P. 56(h)(2). Here, however, as Clark noted in her opposition to the motion to strike, that assertion arose from an

In his summary judgment motion, Means contends that the record does not support genuine contentions of material fact necessary for Clark to make out her claims against him. Summary judgment is proper only if the record on summary judgment shows that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See* M.R.Civ.P. 56. To survive a motion for a summary judgment, the opposing party must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law; "[t]he plaintiff must establish a *prima facie* case for each element of the cause of action." *Rodrigue v. Rodrigue*, 1997 ME 99, ¶8, 694 A.2d 924, 926. "'A fact is material when it has the potential to affect the outcome of the suit.'" *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 5, 721 A.2d 169, 172. The court cannot decide an issue of fact even if the opposing party's chances of prevailing at trial on that issue are improbable. *Cottle Enterprises, Inc. v. Town of Farmington*, 1997 ME 78, ¶ 11, 693 A.2d 330, 334.

**Count 1: Invasion of Privacy**

To prevail on a claim for invasion of privacy, the plaintiff must prove that Means intentionally intruded into Clark's private affairs or concerns and that the intrusion would be highly offensive to a reasonable person. *See Nelson v. Maine Times*, 373 A.2d 1221, 1223 (Me. 1977). The record on summary judgment supports a factual contention that Means invaded Clark's privacy in this sense. On this record, a fact-finder could conclude that on many occasions over a long span of time, Means engaged in non-immunized

---

affidavit that Clark had executed and filed in conjunction with Means' first summary judgment motion. In his reply to Clark's objection to the motion to strike, Means acknowledges that she now has complied with the rule. In other circumstances, the belated record reference might not cure the original problem because the movant, in his reply filing, still would not have had the opportunity to evaluate and respond to the newly identified record reference. Here, on the other hand, Means does not claim surprise or prejudice. Thus, in the unique circumstances at hand, the court denies those parts of Means' motion to strike that are based on the initial omission of record references to Clark's affidavit.

Finally, the court need not address Means' motion to strike POSMF ¶ 14 because that assertion does not influence the disposition of his summary judgment motion.

2

conduct[3] which amounts to an intrusion into highly personal matters that were of no legitimate concern to him. Means argues that, impliedly or otherwise, she consented to that conduct, particularly because of her acquiescence to that behavior and her failure to repudiate his conduct on a number of instances in the workplace and on the telephone. However, the inquiry inherent in the liability claim is whether a reasonable person would find the invasion to be "highly offensive." *Id.* This is a point that is uniquely suited for the assessment of a fact-finder, particularly a jury, which will constitute the fact-finder here. Further, to the extent that Clark's individual response is material, the record is sufficient to generate a claim that she found Means' conduct to be highly offensive. She told Means to stop calling her, and she left her job at Means Investment because she felt that she was being abused and harassed. Although there is considerable evidence to the contrary, the record generates a genuine issue of material dispute. Finally, evidence that Clark told Means to stop calling here generates a factual issue to support her allegation that any intrusion into her private concerns was intentional.

## Count 2: Intentional Infliction of Emotional Distress (IIED)

In order to prevail on a claim of IIED, Clark must prove here that Means intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; that Means' conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; that Means' conduct caused Clark's emotional distress; and that Clark's emotional distress was so severe that no reasonable person could be expected to endure it. *See Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18, 22-23.

The court is allocated the responsibility to decide whether a defendant's alleged conduct "may reasonably be regarded as so extreme and outrageous to permit recovery. . . ." *Champagne v. Mid-Maine Medical Center*, 1998 ME 87, ¶ 16, 711 A.2d 842, 847. In the particular circumstances of this case, the question of whether the record provides genuine factual support for this element is a close one. In the abstract, Means'

---

[3] The order on Means' first motion for summary judgment establishes some parameters for Clark's claims, bounded by Means' immunity from civil liability under the Workers' Compensation Act and under the applicable period of limitations.

4

repeated inquiries of Clark regarding her sex life and sexual history can be viewed as utterly reprehensible. However, that conduct cannot be seen in a vacuum, and that surrounding evidence reveals – to a significant extent, without dispute – that Clark's relationship with Means was often flirtatious. However, several additional factors tend to make this element a triable issue: Means had a high level position within the company that employed Clark, thus creating a disparity of power; Clark asked Means to stop calling her, when those calls were the only vehicle for the conduct that may be actionable here; and when Clark left her job with Means Investment in 1998, she wanted to escape a situation that she characterizes as abusive and harassing. These factors shed light on the alleged quality of the conduct attributed to Means, and they also bear on the extent of the injuries she claims, which must be of considerable magnitude in order to support relief for a IIED claim.

Clark's evidence of Means' state of mind (a separate element of a IIED claim) is less than considerable. The record demonstrates that Clark was sometimes receptive to the sexualized nature of his conduct. For example, when Means touched Clark between her legs, Clark responded by rubbing his back. Also, she sometimes participated in employees' conversations about sexual matters. *See* DSMF ¶ 30. Further, in their private conversations, Clark sometimes answered his intrusive questions. All of this evidence bears directly on the question of whether any infliction of emotional distress was intentional or knowing, or whether Means was certain that his conduct would cause any such result. However, the same factors noted above (evidence that she asked him to stop calling her and that she cried in his presence when he asked her about having sex with another employee; and his superior position in the business where she worked) provide some support on which Clark could argue that the Means was on notice regarding the impact of his conduct on her.

Finally, although this is also (at best for the plaintiff) a close question, the evidence may be seen to support the allegation that Clark must prove at trial, that a normally constituted reasonable person "would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *See Town of Stonington v. Galilean Gospel Temple*, 1999 ME 2, ¶ 11, 722 A.2d 1269, 1272. The circumstances that one must consider include the nature of Clark's relationship with Means, in which there

is evidence that Clark sometimes responded favorably toward Means' suggestive comments and behavior. Nonetheless, the evidence allows an argument that in relation to Means, Clark was in an inferior and therefore vulnerable position in the workplace. There also is evidence that she wanted him to stop, that she quit her job because of Means' conduct, that she has had difficulty sleeping and has obtained therapeutic intervention. These factors bear on Clark's personal reaction to Means's conduct, but they are not irrelevant to the objective standard that Clark must prove.

Therefore, on this record, Clark's claim for IIED may be precarious. *See generally Lerman v. Mt. Sinai Cemetary Ass'n, Inc.*, CV-99-613, 2001 Me.Super. LEXIS 19, at *28-31 (Cumberland Cty, Feb. 28, 2001). However, the narrow issue presented in the motion at bar is whether there exists sufficient evidence to make a factual argument in support of such a claim. In light of that deferential standard of analysis, the court denies Means' motion as to count 2.

## Count 3: Negligent Infliction of Emotional Distress (NIED)

A plaintiff may pursue a valid claim for NIED only in cases of bystander liability, in cases where the relationship between the parties is one that specifically allows such a claim, and in circumstances where a claim for emotional distress is not subsumed within a claim for a separate tort. *Curtis*, 2001 ME 158, ¶ 19, 784 A.2d at 26. None of those circumstances exists here, and therefore s a matter of law Clark cannot maintain a claim for NIED. Thus, Means is entitled to summary judgment on this claim.

The entry shall be:

For the foregoing reasons, defendant Paul B. Means' motion for summary judgment is granted in part and denied in part. Summary judgment is entered for Means on count 3 of the complaint (negligent infliction of emotional distress). The motion is denied as to counts 1 and 2.

Means' motion to strike is granted in part and denied in part, and the clerk shall incorporate this order on that motion into the docket by reference.

Dated: May 18, 2004

_____
Justice, Maine Superior Court

6

BARBARA A CLARK   - PLAINTIFF

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2001-00170

Attorney for: BARBARA A CLARK
PAUL A WEEKS
LAW OFFICE OF PAUL WEEKS
82 COLUMBIA STREET
BANGOR ME 04401

## DOCKET RECORD

vs
PAUL B MEANS   - DEFENDANT

Attorney for: PAUL B MEANS
PAUL CHAIKEN
RUDMAN & WINCHELL
84 HARLOW ST
PO BOX 1401
BANGOR ME 04402-1401

Attorney for: PAUL B MEANS
ANNEMARIE L STOREY
RUDMAN & WINCHELL
84 HARLOW ST
PO BOX 1401
BANGOR ME 04402-1401

MEANS INVESTMENT CO. INC. - DEFENDANT

Attorney for: MEANS INVESTMENT CO. INC.
PAUL CHAIKEN
RUDMAN & WINCHELL
84 HARLOW ST
PO BOX 1401
BANGOR ME 04402-1401

Attorney for: MEANS INVESTMENT CO. INC.
ANNEMARIE L STOREY
RUDMAN & WINCHELL
84 HARLOW ST
PO BOX 1401
BANGOR ME 04402-1401

Filing Document: COMPLAINT
Filing Date: 09/05/2001

Minor Case Type: OTHER PERSONAL INJURY TORT

## Docket Events:

05/09/2002 FILING DOCUMENT - COMPLAINT FILED ON 09/05/2001

        NOTE - PRIOR ENTRIES IN MANUAL DOCKET ENTERED ON 09/05/2001

05/09/2002 Party(s):  BARBARA A CLARK
        ATTORNEY - RETAINED ENTERED ON 09/05/2001
        Plaintiff's Attorney: PAUL A WEEKS

05/09/2002 ATTORNEY - RETAINED ENTERED ON 10/05/2001