No. 47,919

WILLIAM FROELICH, *Appellant*, v. SYD WERBIN, *Appellee*.

(548 P. 2d 482)

. Opinion filed April 10, 1976.

*Jim Lawing*, of Wichita, argued the cause, and was on the brief for the appellant.

*Robert W. Kaplan*, of Kaplan, McMillan & Anderson, of Wichita, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action to recover damages for an alleged invasion of plaintiff's privacy. The plaintiff-appellant is William Froelich. The defendant-appellee is Syd Werbin. The plaintiff's claim for invasion of his privacy arose in October 1969 while plaintiff was a patient at St. Francis Hospital in Wichita. The theory of the plaintiff's case is that the defendant Werbin caused plaintiff's privacy to be intruded upon by hiring a hospital orderly, Dan Marlett, to enter plaintiff's hospital room to obtain samples of plaintiff's hair without plaintiff's knowledge or consent. Plaintiff claims to have suffered mental distress and injury as a result of this intrusion on his seclusion. This case was before the court in *Froelich v. Werbin*, 212 Kan. 119, 509 P. 2d 1118. It involved an appeal from an order of the district court dismissing the case on the grounds of *res judicata* and failure to join a "contingently necessary" party. We reversed the judgment of dismissal and remanded the case to

the district court. The merits of plaintiff's claim were not considered.

A companion case involving the same alleged invasion of privacy was considered by the court in *Froelich v. Adair,* 213 Kan. 357, 516 P. 2d 993. We reversed that case for the reason that the district court failed to make findings of controlling facts as required by K. S. A. 60-252 *(a)*. We held specifically that whether or not plaintiff had a cause of action under the law applicable to intrusion upon seclusion must await the determination of the facts of the case on a new trial.

In *Froelich v. Adair,* supra, we set forth briefly the factual circumstances claimed by plaintiff as the basis for invasion of his privacy. They are as follows: Burneta Adair's former husband, Tom Hamilton, had previously sued her seeking to recover a million dollars for defamation because she had stated he was homosexual and William Froelich was his lover. Truth is a defense to an action for defamation and Mrs. Adair was interested in obtaining evidence from William Froelich as to the truth of her statements. Syd Werbin, deputy sheriff and a friend of Mrs. Adair, informed her that Froelich had become ill and was at St. Francis Hospital. Mrs. Adair then became alarmed that he might not be able to testify in the defamation action. She had previously obtained hair from her former husband's bed and underclothing and had it analyzed, and she suggested in her conversation with Werbin it would be a good idea to get samples of Froelich's hair for analysis and comparison. Werbin paid an orderly who obtained combings from Froelich's hairbrush and a discarded adhesive bandage to which Froelich's hair was attached. Werbin passed these on to Mrs. Adair and she had them analyzed. During a deposition session with Hamilton's attorneys, she let it be known she had the samples of Froelich's hair obtained from his hospital room. Although he had not been aware of the taking of his hair samples at the time they were taken, when he later learned of the intrusion he claimed he was emotionally upset over the alleged invasion of his privacy and brought suit against both Mrs. Adair and Syd Werbin in separate actions.

Following the reversal in the first appeal in this case in May of 1973, the district court set Froelich's action against Werbin for trial by jury on March 11, 1974. On the morning of the trial plaintiff's counsel discovered that plaintiff was confined to the hospital. The trial proceeded in his absence after assurances from

plaintiff's counsel that plaintiff would be present. By the start of the second day of trial it became clear to all that the plaintiff would not be able to appear at the trial. The plaintiff, William Froelich, never appeared in court or testified in his own behalf. The plaintiff did not call to testify in person either the defendant, Syd Werbin, or the hospital orderly, Dan Marlett. The only evidence presented by the plaintiff on the issue of defendant's liability for invasion of privacy was the discovery deposition of the defendant Werbin which was read to the jury over defendant's objections. The only other testimony presented by the plaintiff was on the issue of plaintiff's damages. To prove his damages the plaintiff called to the witness stand Burneta Adair, Dr. Harold McNamara, the plaintiff's psychologist, and Crysta Christmann, a business associate. As could be expected the trial record is full of objections to evidence, some of which were sustained and some of which were overruled. On the second day of the trial the plaintiff rested his case. The trial court sustained the defendant's motion for a directed verdict. The plaintiff Froelich has appealed to this court claiming a number of trial errors.

In sustaining the defendant Werbin's motion for a directed verdict the trial court found that as a matter of law the plaintiff had failed to make out a *prima facie* case of invasion of privacy sufficient to raise a jury question. It held that as a matter of law there was no intrusion on the seclusion of the plaintiff sufficient to establish an invasion of privacy. On this appeal the plaintiff contends that it was error for the trial court to sustain the defendant's motion for a directed verdict. Other points of error are concerned primarily with evidentiary rulings pertaining to plaintiff's damages. It is obvious that if the trial court was correct in holding that the defendant was not liable as a matter of law for invasion of privacy then any errors pertaining to the admissibility of evidence on the issue of plaintiff's damages would be harmless error.

In recent decisions we have recognized and adopted the analysis of the right of privacy as contained in the Restatement of the Law, Second, Torts § 652A *et seq.* (*Froelich v. Adair*, supra; *Dotson v. McLaughlin*, 216 Kan. 201, 531 P. 2d 1.) As pointed out in those decisions the Restatement, Second, Torts § 652A declares that the right of privacy is invaded when there is (*a*) unreasonable intrusion upon the seclusion of another; or (*b*) appropriation of the other's name or likeness; or (*c*) unreasonable publicity given to the other's

private life; or ( *d* ) publicity which unreasonably places the other in a false light before the public.

We now turn to the evidentiary record before us to determine whether or not a claim for an invasion of privacy has been established under any of the four categories discussed above. It is obvious that we do not have involved here the appropriation of Froelich's name or likeness (652C); or unreasonable publicity given to Froelich's private life (652D); or publicity which unreasonably placed Froelich in a false light before the public (652E). If an invasion of privacy is to be made from the evidence it must, of necessity, be based upon some unreasonable intrusion upon Froelich's seclusion as defined in Restatement, Second, Torts § 652B. In *Froelich v. Adair,* supra, the rule of liability for intrusion upon seclusion is stated as follows:

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable man." (Syl. ¶ 2.)

As pointed out above the only evidence of an intruding act in the record now before us is contained in the deposition testimony of the defendant Werbin which was read by the plaintiff's counsel to the jury. It is set forth in the record as follows:

"Subsequently, the defendant Werbin testified before the jury through a deposition being read. He recalled Mrs. Adair's statement that 'she sure would like to have a sample of his hair, and what for I didn't know, and I just said that if possible I would see what I could do, but I said I didn't know.' . . . He recalled a time when he took Froelich to the lockup ward at St. Francis Hospital and on one occasion when he was at the hospital he talked to an orderly about getting some hair of Froelich. He had not known the orderly before meeting him at St. Francis Hospital, but the orderly was named Dan Marlett. He asked Marlett if Froelich was still in the hospital and when he was told yes he asked if there was anyway that he could arrange to obtain a sample of his hair. A few days later, the witness recalled, Marlett said that he had obtained a sample of Froelich's hair and Marlett said that he had gotten some of the hair off a brush lying on a stand or dresser and some from a bandaid which a nurse had laid down. The defendant then gave $5 to Marlett and he testified that he was not reimbursed by Mrs. Adair when he delivered the hair to her. He told her he didn't want the money, that he was doing it as a favor to her. . . ."

We have concluded that on the basis of the evidentiary record before us the plaintiff Froelich failed as a matter of law to establish an invasion of his right of privacy. There is no evidence in the record to show physical intrusion into a privately secluded place

which Froelich had secured for himself. The plaintiff introduced no evidence that the hair was taken from *plaintiff Froelich's hospital room.* There was no evidence that the hair was taken from the person of the plaintiff. In fact, both court and counsel throughout the trial assumed that the hair was taken from a piece of adhesive tape which had been thrown into a trash container in a utility room. Plaintiff offered no evidence to establish that the plaintiff's state of mind was disturbed at the time the hair was obtained by the orderly. The evidence was undisputed that the plaintiff did not know the hair had been obtained by Marlett until three or four months later. We wish to emphasize that the insufficiency of the evidence to prove an invasion of privacy was determined by the trial court after a full evidentiary hearing on the merits—not on discovery depositions considered on motion for summary judgment.

In comment (*d*) of § 652B of the Restatement it is stated that there is no liability for intrusion upon seclusion unless interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. In our judgment the trial court was correct in holding that the plaintiff's evidence failed to establish a wrongful intrusion of such a nature as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. Here the undisputed evidence showed that the plaintiff's hair was obtained by the hospital orderly in an unobtrusive manner. In our judgment the evidence was insufficient as a matter of law to establish a cause of action for intrusion upon seclusion.

In view of the fact that there was no liability established on the part of the defendant Werbin as a matter of law, any errors made by the trial court in its rulings on the admissibility of evidence pertaining to plaintiff's damages constituted harmless error. It is not necessary that they be considered on this appeal.

The judgment of the district court is affirmed.