STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-09-081
PAF - YOR - 1/6/09

THE LOUGEE CONSERVANCY,
et al.,

       Plaintiffs

v.

**DECISION AND ORDER
ON PENDING MOTIONS**

CITIMORTGAGE, INC., et al.,

       Defendants

## I. INTRODUCTION

The Lougee Conservancy, Eleanor Lougee Chapin, David Chapin and Arthur James Chapin have brought a seven count first amended complaint for compensatory and punitive damages against CitiMortgage, Inc., Safeguard Properties, LLC and Shelley Alley and David Alley doing business as D & S Properties.

The Lougee Conservancy is a non-revocable trust on North Road in Parsonsfield formed in 1964, which holds title to nearly 600 acres of land. The property includes several structures including a building known as the Lougee Homestead. The various buildings, including a barn, contain a large number of items which have been in the Lougee family for multiple generations. The property is clearly posted with no trespassing signs and is not and has not been encumbered by a mortgage.

In December of 2008 CitiMortgage began a foreclosure action against property owned by an Adrienne Northrup located at 515 North Road in North Parsonsfield some 4 miles away from the Lougee property. CitiMortgage had requested that Safeguard examine the property. Safeguard, which has its headquarters in Ohio, later engaged the

Alleys who are based in Waterboro to actually enter and secure the property at 515 North Road after it appeared to Safeguard that the property was vacant and abandoned.

D & S however improperly entered the Lougee property about March 24, 2009, removed and changed some locks, opened a number of drawers, closets and containers, examined much of the contents of the property, allegedly ransacked the property and may have damaged some of the personal property. No property was removed. Once this entry was discovered on April 2, 2009 by Arthur James Lougee who lived in a nearby but separate building on the Conservancy property, the Sheriff's department was contacted which in turn contacted D & S. As soon as D & S was informed of its error the locks were promptly removed. This suit followed. After extensive discovery three motions have been filed, comprehensively briefed and fully argued. D & S has filed for partial summary judgment, while Safeguard and CitiMortgage have filed for summary judgment. As was done at oral argument I will consider each of the seven counts in turn and then discuss whether Safeguard or CitiMortgage are potentially liable for the actions of D & S.

## II. COUNTS I AND II – TRESPASS COUNTS

Count I alleges a common law trespass, while Count II sought damages for statutory trespass pursuant to 14 M.R.S.A. §§7551-B. The plaintiffs have indicated that they are not seeking damages for emotional distress pursuant to either Count I or Count II. Once the evidence has been presented at trial I can determine whether the trespass claims belong only to the Conservancy or whether any of the individual plaintiffs have a claim. It appears that either the entire trespass claim or at least the majority of it belongs to the Conservancy, as the owner of the property, and not the individuals.

2

## III. COUNT III – INVASION OF PRIVACY

In Count III the plaintiffs claim that the property was a place of solitude and seclusion, that the buildings contained personal and private property and that they had a reasonable expectation of privacy. None of the individuals resided in any building that was entered and most of the personal property belonged to the Conservancy rather than the individuals. The Conservancy property was certainly private and was used in part to store the family's antiques, family memorabilia and a variety of items accumulated by multiple generations of the family. It was agreed that the Lougee Conservancy, as a trust, cannot maintain a claim for invasion of privacy. The question is whether any of the three individuals, one who lives in a non-entered separate building on the property, one who resides in a nearby town, and one who lives in California may bring this claim.

In *Estate of Berthiaume v. Pratt*, 365 A.2d 792, 795 (Me. 1976) the Law Court recognized a "right to privacy", at 794, and held that the law of privacy addressed "four distinct interests of the individual." It held that, "Each of the four different interests, taken as a whole, represent an individual's right 'to be let alone'." The Court further stated that, "These four kinds of invasion are:

(1)     intrusion upon the plaintiff's physical and mental solitude or seclusion;

(2)     public disclosure of private facts;

(3)     publicity which places the plaintiff in a false light in the public eye;

(4)     appropriation for the defendant's benefit or advantage of the plaintiff's name or likeness.

Only the first prong, an intrusion upon the plaintiff's physical and mental solitude or seclusion, applies in this case. The *Berthiaume* case quoted Prosser at *Law of Torts*, 804 (4th Ed. 1971) where he stated, in part, "… the first and second require the invasion of something secret, secluded or private pertaining to the plaintiff."

3

In *Nelson v. Maine Times*, 373 A.2d 1221 (Me. 1977) the Law Court addressed a claim by a member of the Penobscot Tribe who objected to the publication of a photograph of her infant son without her permission. The Law Court discussed three of the four types of invasion of privacy. In discussing an intrusion upon the seclusion of another the Law Court referred to the Restatement (Second), Torts §652B. That Section states, "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." The section creates liability for either the intrusion upon the solitude or seclusion of a person or the intrusion into his or her private affairs. Any "... interference with a plaintiff's seclusion must be a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object." Comment d.

The Law Court, at 1223, also referred to *Froelich v. Werbin*, 219 Kan. 461, 548 P. 2d 482, 5 (1976) and the Restatement for the proposition that, "a complaint should minimally allege a physical intrusion upon premises occupied privately by a plaintiff for purposes of seclusion."

While the Lougee family members certainly had every right to expect that the Conservancy's and their desire for privacy would be respected the entry was into property owned by the Conservancy. None of the plaintiffs resided in any of the property that was entered and the items that were looked at primarily belonged to the Trust. I have carefully reviewed Section 652B, its comments and examples, and do not find that the trespass, while certainly wrong and certainly offensive, also constitutes an invasion of privacy by intrusion upon seclusion.

The plaintiffs have cited *Muratore v. M/S Scotia Prince*, 656 F.Supp. 471, 483 (D.Me. 1987) which involved, in part, the plaintiff's unsuccessful "intrusion upon seclusion" privacy claim. That opinion does change the outcome in this case.

## IV. COUNT IV - CONVERSION

Count IV seeks damages for conversion because of the temporary control over personal property between March 24, 2009 and April 2, 2009. This count fails in large part as to the individual plaintiffs as the Conservancy owned most of the personal property. It fails fully as to all plaintiffs. The Restatement (Second) of Torts §222A defines conversion as the "... intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." "In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important: (a) the extent and duration of the actor's exercise of dominion or control; ... (d) the extent and duration of the resulting interference with the other's right of control; (e) the harm done to the chattel; (f) the inconvenience and expense caused to the other."

A claim for conversion does not fit this case where the duration of the wrongful dominion and control was brief, little if any harm was done to the chattels and the inconvenience and expense were minimal. A successful claim for conversion would produce the ironic result that the defendants, upon satisfaction of judgment on a conversion count, would own the property. They would "... in effect (be) required to buy it ...." See comment C. Also see illustration 12.

## V. COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Conservancy itself cannot bring this claim, but it is potentially available to each of the three individual plaintiffs.

5

This claim was most recently extensively discussed by the Law Court in the case of *Lyman v. Huber*, 2010 ME 139 (Dec. 28, 2010) where the Law Court reversed a substantial award for the intentional infliction of emotional distress involving a plaintiff who suffered for over a decade from a psychological and emotionally abusive relationship. The Law Court at ¶16 restated the requirements for recovery. They include the requirement that the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result; that the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; that the actions of the defendant caused emotional distress to the plaintiff; and that the emotional distress was so severe that no reasonable person could be expected to endure it." See *Curtis v. Porter*, 2001 ME 158, ¶10, 784 A.2d 18, 22-3.

There is no indication that D & S intentionally inflicted severe emotional distress, but the evidence could support a claim that it did so recklessly given the uncertainty as to whether it was entering the correct property. The entry of an unoccupied property, the inspection of it and even the examination of the private contents of the property, while wrong, do not exceed all possible bounds of decency and are not atrocious and utterly intolerable.

All plaintiffs suffered emotional distress but of varying degrees. However, the claim also fails for all three individuals as it was not so severe that no reasonable person could be expected to endure it. The focus must be on the "reasonable person" not on an individual who may be more sensitive or more vulnerable than the average person. Unoccupied property was entered in error, nothing was stolen, items were not deliberately damaged and the error was promptly corrected.

## VI.    COUNT VI – PUNITIVE DAMAGES

The plaintiffs have understandably sought punitive damages perhaps, in part, to reflect an ongoing national concern over a variety of misconduct in some cases by some members of the financial services industry. To prevail on a punitive damage claim the plaintiffs must establish by clear and convincing evidence, that it is highly probable, that D & S acted with malice or implied malice.

A mistake was clearly made and sufficient care was not taken. D & S decided, after attempting to but not conclusively determining where the property was, to proceed anyway. There was confusion in a rural area, where neither property was numbered, where a neighbor was not sure and where conflicting information was being provided. However there was no malice which requires a finding of ill will. Carelessness certainly. Inattention to detail certainly. But no malice.

Likewise there is no implied malice which, as stated by Justice Alexander at Instruction 7-114 in Maine Jury Instruction Manual, Fourth Edition, means "... that the defendant engaged in deliberate conduct which, while motivated by something other than ill will toward any particular person, is so reprehensible that malice toward a person injured as a result of the conduct can be implied."

It is true that purposes of awarding punitive damages are to deter the repetition of such conduct and to force individuals and corporations to change their ways. Portions of the banking industry and certain practices need reformation. We also wish to deter negligent driving and, even more importantly, operating under the influence. But the existence of a wrong, in the absence of malice or implied malice, does not permit the possibility of punitive damages. The conduct of D & S in entering was neither malicious nor "so reprehensible that malice ... can be implied."

7

## VII. COUNT VII – NEGLIGENCE

In this final count the plaintiffs seek damages for negligence. The trespass counts will permit recovery for the limited types of damages available to the plaintiffs. In summary, judgment will be entered for all defendants on Counts III – VII of the first amended complaint.

## VIII. MOTION OF SAFEGUARD FOR SUMMARY JUDGMENT

Safeguard claims to be an independent contractor and thus not liable for any actions of D & S. Given Safeguard's involvement with D & S and their combined confusion concerning the location of the property, along with factual disputes as to the relationship between Safeguard and D & S the motion is denied.

## IX. MOTION OF CITIMORTGAGE FOR SUMMARY JUDGMENT

Here I agree that CitiMortgage cannot be held liable for the acts of D & S. Its involvement is too remote, it gave only general instructions to Safeguard and did not control or have the right to control the details of the actions of Safeguard or D & S. See generally *Murray's Case*, 130 ME 181, 6 (1931).

The entries are:

Motion of Shelley Alley and David Alley for partial summary judgment is granted.

Motion of Safeguard Properties, LLC for summary judgment is denied.

Motion of CitiMortgage, Inc. for summary judgment is granted.

Judgment for all defendants on Counts III – VII of the first amended complaint.

Judgment for the defendant CitiMortgage, Inc. on Counts I and II of the first amended complaint.

Dated:     January 6, 2011

Paul A. Fritzsche
Justice, Superior Court

8

ATTORNEYS FOR PLAINTIFF:
THIMI MINA, ESQ.
KATHERINE M LYNCH, ESQ.
MICHAEL A CUNNIFF, ESQ.
MCCLOSKEY MINA & CUNNIFF
12 CITY CENTER
PORTLAND ME   04101

ATTORNEY FOR DEFENDANT SAFEGUARD PROPERTIES LLC:
MICHAEL TRAISTER, ESQ.
MURRAY PLUMB & MURRAY
PO BOX 9785
PORTLAND ME   04104-5085

ATTORNEY FOR DEFENDANT CITIMORTGAGE INC:
CHRISTOPHER P SILVA, ESQ.
EDWARDS ANGELL PALMER & DODGE LLP
111 HUNTINGTON AVENUE
BOSTON MA   02119

ATTORNEY FOR DEFENDANTS DAVID & SHELLEY ALLEY & D&S PROPERTIES LLC:
MARK E PORADA, ESQ.
PIERCE ATWOOD
ONE MONUMENT SQUARE
PORTLAND ME   04101-1110