CHARLES W. ALLEN *vs*. FRANK ROSSI.

Androscoggin.      Opinion June 13, 1929.

*Tascus Atwood*, for plaintiff.
*Oakes & Farnum*, for defendant.

SITTING: WILSON, C. J., DUNN, STURGIS, BARNES, PATTANGALL, FARRINGTON, JJ.

DUNN, J.    There are two counts. One, for criminal conversation aggravated by the wrongful alienation of the plaintiff's wife's affections, which, by implication, the defendant carried to himself; the other, for the alienation only.

Plaintiff prevailed with the jury. No special finding was made. The award of damages is general in the sum of $6,474.17. On the grounds that the verdict is against evidence, contrary to law, and that the damages are excessive, defendant moves for a new trial.

Speaking on the subject of the first count, there is warrant for the verdict to the utmost allegation, in rational connection between the fact proved and that which the jury ultimately inferred.

To press onward in inquiry, the sole question remaining is about the damages. Are they clearly excessive?

Married in 1905, plaintiff and his wife, the age of neither being stated, lived in the marital relation until one day in August of 1928, when separation ensued. The wife left her husband. It seems fair inference that she then left their twelve year old daughter too.

"Things, perhaps, might not have been as smooth as they should have been, . . . she had found fault about my actions at the house" (meaning his habit of tracking dirt from the barn), testified the plaintiff, (but) "I have no fault to find up to early last spring (1928) . . . I have nothing to complain. She made a nice home for me."

Plaintiff and defendant were thrown into acquaintance in 1923 when the former had employment for himself and team under the oversight of the latter. In the fall defendant came to plaintiff's to board and stayed a few weeks. He boarded there three months the next year. Afterwards, throughout four years, though living elsewhere, defendant was often at plaintiff's house.

In 1927, in plaintiff's absence, a neighbor unexpectedly knocked

at his door. Defendant, his clothing in disorder, hastened to the shed. Plaintiff's wife, excited in manner and her countenance flushed, came from the room defendant had left.

At midnight plaintiff's wife's automobile stood, unoccupied, on a side road, a mile from her house. Near her automobile was the defendant's automobile, stopped, only he and she in it, a robe covering her head.

The two were riding at three o'clock in the morning on a city street.

They were frequently at public dances in the nighttime until small hours. They met, from time to time, at the home of the wife's sister, and together went away in daylight.

Six weeks before the instant action was begun, plaintiff learned of the house and automobile incidents. Before this point of time he had no suspicion of assignation, nor was he apprehensive of alienation.

He interviewed the defendant, who denied attachment for the wife. Later, defendant admitted he had said to the wife that which was to the wrong of the plaintiff.

Without alluding to other testimony, such were features of importance at the trial, on the side of the plaintiff.

Defendant swore to facts of tendency to show that his conduct had not given plaintiff a cause of action. Relations with the wife had been friendly, nothing more, with plaintiff's approbation, is, in epitome, what the defendant testified.

The wife flatly contradicted her husband's contentions. She bore witness that his unkind treatment, borne for their child's sake, coupled with her husband's slovenliness, and intensified by his unsavory behavior with other women, destroyed domestic happiness, weaned her affection for him, and drove her to quit her husband and his house.

Testimony corroborative, in part, of that by the wife, was introduced.

Apparently the testimony for the defense was not given credit by the jury.

What, in a case such as this, is the measure of relief which the law affords?

The gist of the distinct actionable torts of criminal conversa-

tion and alienation of affections is the loss of the property right of consortium. *Valentine* v. *Pollak*, 95 Conn., 556; *Bigaouette* v. *Paulet*, 134 Mass., 123; *Evans* v. *O'Connor*, 174 Mass., 287. The literature of the law emphasizes the society, comfort, and assistance which the wife, having affection for her husband, would have afforded him, had he not been deprived thereof, intentionally and unlawfully, by art and contrivance. So, damages are recoverable for the loss of the conjugal fellowship of the wife, her company, coöperation, and help in ever connubial relation; damages also for mental suffering.

These are the elements by way of compensation. From the nature of things they are difficult to be estimated. There might be every variety of cases. They vary very much. For instance, a hideous case which takes affection from the household. And there might be a case where the degree of affection which could be supposed to have existed would be so slight or small that the loss would be regarded as of little moment, comparatively speaking. Between these extremes there might be a medium ground, according to the picture of the home life.

Social rank and influence, which the reputation for wealth goes to make up, may make compensable injury from a wrongful act the greater. *Humphries* v. *Parker*, 52 Me., 502. Indifferent or repugnant attitude of mind on the part of the wife toward her husband may mitigate compensatory damages, in proportion to the circumstances in evidence. *Cutter* v. *Cooper*, 234 Mass., 307, 316. The value of the performance of the duty to support, clothe, and care for her may lessen the amount of compensable injury. *Prettyman* v. *Williamson*, 39 Atl., 731 (Del.).

Where a tort is malicious, wanton, or willful, damages, called interchangeably exemplary, punitive, or vindictive damages, which would be beyond a compensation or satisfaction for the injury, may be superadded to compensatory damages by way of punishment and example. *Goddard* v. *Grand Trunk Railway*, 57 Me., 202.

Criminal conversation furnishes the necessary foundation for punitive damages. *Hargraves* v. *Ballou*, 131 Atl., 643 (R. I.).

When imposed, punitive damages are not in the sense of, or as a substitute for, criminal punishment. *State* v. *Shevlin-Carpenter Co.*, 108 N. W., 935 (Minn.). Punitive damages are distinguishable

from a fine. A fine is imposed on a person for a past violation of law, while punitive damages have reference rather to the future than to the past conduct of the offender, as an admonition to him not to repeat the offense, and to deter others from the commission of like offenses. 8 R. C. L., 594. Touching such damages, it is not the reputation for pecuniary ability, but pecuniary ability itself, which is of consequence. The reason is that may be excessive punishment to one man which is slight or no punishment at all to another. *Audibert* v. *Michaud*, 119 Me., 295; *Rea* v. *Harrington*, 58 Vt., 181; Southerland on Damages, Sec. 406.

The discretion of the jury in imposing punitive damages is not limitless. Ordinarily, and under the same circumstances as in a case of compensatory damages, courts exercising revisory power may grant a new trial for excessiveness of vindicative damages. 8 R. C. L., 680. Our own decisions recognize this. *Jowett* v. *Wallace*, 112 Me., 389; *Audibert* v. *Michaud*, supra; *Wentworth* v. *Gerrish*, 121 Me., 583. In other jurisdictions, punitory awards, in actions like the present one, have been set aside (*Peek* v. *Traylor* [Ky.], 34 S. W., 705), or reduced (*Decker* v. *Fair* [Mich.], 193 N. W., 288). On the other hand, conduct which strikes at the sanctity of the home, and breaks up the home, that most sacred institution to civilization, judicial opinions universally censure. But not every roof is a home.

It may be that plaintiff's trust in his wife misled him; what he saw and heard may have made him indignant, more readily than suspicious. His visual imagination may not have been bold. But eventually resentment kindled.

Over the period of two months, preceding the commencement of this suit by a period of somewhat shorter duration, plaintiff's wife was out of their house four to six nights a week to the hour of one and even to dawn. At times plaintiff knew where his wife had been; at other times he did not and she refused to tell him. He had seen his wife and the defendant at dances, had seen them leave the hall and return, had seen them near the theatre, had heard her statement to the effect that, to be free to wed, she and the defendant would divorce their respective spouses. Plaintiff had another conversation with the defendant, who "never done anything to straighten this out."

A defendant, while guilty, would not be so guilty, in respect to actual or compensatory damages, if remissness on the part of the husband united with the defendant's wrong in producing the result. An English case holds that the husband's negligence of his wife's conduct may be shown, not in bar, as consent or connivance might be (*Murrell* v. *Culver* [Md.], 118 Atl., 803) ; (*Kohlhoss* v. *Mobley* [Md.], 62 Atl., 236), but in partial defense; in other words, in reduction of damages. *Calcraft* v. *Harborough*, 4 C. & P., 499, 19 E. C. L., 494. A husband, being a reasonable man, had not causlessly alarmed, though his alarm was from probable and rational conjecture only, would, it is reasonable to assume, speak words of caution, would admonish his helpmate against temptation. He would interfere, on occasion, to protect his wife. *Calcraft* v. *Harborough*, supra.

When plaintiff had learned that there were two available men to give evidence of facts tending to show the debauchery of his wife, he not only sued the defendant but he libeled his wife for divorcement.

For their mutual comfort and support, for the good of society, the policy of the law encourages husband and wife, if living apart, to come together again. Reconciliation should be followed by purity in their marriage relations, and happiness in their home. *Prettyman* v. *Williamson*, supra. The filing of a libel for divorce, though in legal right, is not usually conducive to the reunion of husband and wife.

The question recurs : Are the damages unwarranted? After all, this is but another way of inquiring : Considering the case in every phase relevant to damages which the jury was authorized to adopt, is the whole assessment palpably too great?

Defendant is superintendent of a concern engaging in the business of improving highways. Of his salary, there is no evidence, nor is there of his age. Evidence of his repute for wealth, his actual wealth, or of his poverty, there is none. *Johnson* v. *Smith*, 64 Me., 553 ; *Rea* v. *Harrington*, supra. Nothing indicates his prospects in life, aside from the employment he has, and has had, inferentially, for ten years.

It is always a delicate undertaking to draw the distinctive line separating a permissible from an inordinate award. This is es-

pecially so where the underlying measure is vague. But now, conclusion is that the award transcends reasonable the evidence, it remains but to declare that wrong violating integrity of the verdict has been done.

Prejudice unduly inflamed, contempt excessively awakened, sympathy overaroused, disgust, bias in the one direction, or emotion, must have swayed the jury, till there was brought to bear upon the situation a state of feeling unappropriate to the dispassionate discharge of duty.

The motion is sustained, and a new trial granted. On the new trial no other question than that of damages need be litigated.

*Motion sustained.*
*New trial granted*
*as to damages.*