STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  DOCKET NO. CV-11-443,
                                                  JAW – CUM - 10/30/2013

VALERIE L'HEUREUX,

        Plaintiff/Counterclaim Defendant

                                                  ORDER ON MOTION FOR
            v.                                    SUMMARY JUDGMENT

SCOTT and KAREN MURPHY,                           STATE OF MAINE
                                                  Cumberland, ss, Clerk's Office

        Defendants/Counterclaim Plaintiffs        OCT 30 2013

                                                  **RECEIVED**

        Plaintiff moves the court for summary judgment on all four counts of the

Defendants' Counterclaim.


                              BACKGROUND

        Valerie L'Heureux and Scott and Karen Murphy are neighbors, respectively

residing at 5 Grandview Drive and 7 Grandview Drive in Scarborough. (Pl.'s S.M.F. ¶ 1.)

Relations between the neighbors strained around 2004, after Ms. L'Heureux erected a

fence along her property line abutting the Murphys' property. (Pl.'s S.M.F. ¶ 2; Defs.'

A.S.M.F ¶ 10.) Mr. Murphy objected to the appearance and quality of the fence, and he

instructed Ms. L'Heureux to clean up debris that was left behind on his property by the

contractors who built the fence. (Pl.'s Reply S.M.F. ¶¶ 11-12, as qualified.) As a result of

the fence dispute, Ms. L'Heureux filed a request for protection from harassment with the

Portland District Court. (Defs.' A.S.M.F. ¶ 13.) The parties agreed to a consent order that

was signed by the court. (Defs.' A.S.M.F. ¶ 14.) Following the consent order, between

2004 and 2010 the parties had virtually no contact. (Pl.'s Reply S.M.F. ¶ 15, as

qualified.)

After an incident in May 2010,[1] Ms. L'Heureux made multiple complaints to state and local officials about the Murphys parking in front of her house and about smoke and other emissions coming from the Murphys' property. (Pl.'s S.M.F. ¶ 4; Defs.' A.S.M.F. ¶ 16.) The Murphys use a backyard stone fire pit, a portable fire pit, and a wood pellet stove. (Pl.'s S.M.F. ¶¶ 6-8.)

In response to Ms. L'Heureux's repeated calls to the police and fire department, in December 2010 Ms. Murphy filed a complaint in the Portland District Court for a protection from harassment against Ms. L'Heureux. (Defs.' A.S.M.F. ¶ 17.) The court held a hearing on January 3, 2011 and entered an order granting the protection from harassment without making any findings of harassment. (Defs.' A.S.M.F. ¶ 18.) The order prohibited Ms. L'Heureux from having any direct or indirect contact with the Murphys. (Defs.' A.S.M.F. ¶ 18.)

Ms. L'Heureux has taken many videos and photographs of the Murphys' property, documenting smoke from the fire pits or stove and matters related to other disputes between the parties. (Pl.'s S.M.F. ¶¶ 11-12.) Some of these photographs and videos show the Murphys' children playing or doing yard work. (Pl.'s S.M.F. ¶ 13.) Ms. L'Heureux admits that she continued to videotape the Murphys' house during the year the protection from harassment order was in effect, including one incident involving an outside birthday party for one of the Murphys' children. (Defs.' A.S.M.F. ¶¶ 30-31.)

In their depositions, the Murphys were asked about whether the videos or photographs taken by Ms. L'Heureux depict the interior of their home. (Pl.'s S.M.F. ¶

[1] Ms. L'Heureux contends that the Murphys' description of the event is inadmissible. (Pl.'s Reply S.M.F. ¶ 15.) The court need not decide whether the statements are admissible because the description of the event is irrelevant to the Murphys' claim for invasion of privacy.

2

20.) The Murphys testified that there might be one video or image that shows the inside of their home. (Pl.'s S.M.F. ¶ 20.) Ms. Murphy testified that she could not recall whether one of the children was visible in the video or image, while Mr. Murphy believed that one of their children was visible but could not be sure. (Pl.'s S.M.F. ¶¶ 21-22.) Mr. Murphy testified that the video showed TV and computer screens inside the home. (Pl.'s S.M.F. ¶ 23.) He believes the video was shot from Eastern Road, which is located behind the Murphys' house. (Pl.'s S.M.F. ¶ 24.) The Murphys do not allege that Ms. L'Heureux ever shared any of the videos or images with anyone other than to meet her discovery obligations in this litigation. (Pl.'s S.M.F. ¶ 25.)

## PROCEDURAL HISTORY

Ms. L'Heureux filed her complaint with a request for preliminary injunction on October 11, 2011, alleging that the Murphys' backyard fires constitute a private nuisance. The Murphys filed their counterclaim on November 11, 2011 alleging three counts: harassment, intentional infliction of emotional distress, and a request for punitive damages. On August 20, 2012, the Murphys amended their counterclaim to add a count for invasion of privacy. Ms. L'Heureux filed a motion for summary judgment on the Murphys' counterclaim on July 19, 2013. On August 12, 2013, the Murphys filed an opposing memorandum of law in which they indicate they are only pursuing their claims for invasion of privacy and punitive damages. Defendants' Counterclaim Mem., page 2.

## DISCUSSION

1. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see*

3

*also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178).

### 2. Invasion of Privacy

Maine law recognizes "that it is an actionable tort to make an unauthorized intrusion upon a person's physical or mental solitude or seclusion." *Nelson v. Maine Times*, 373 A.2d 1221, 1223 (Me. 1977). To survive summary judgment on an invasion of privacy claim, the Murphys "must present evidence of an (1) intentional, (2) physical intrusion (3) upon premises occupied privately by a plaintiff for purposes of seclusion, and (4) the intrusion must be highly offensive to a reasonable person." *Lougee Conservancy v. CityMortgage, Inc*, 2012 ME 103, ¶ 16, 48 A.3d 774; *see also* RESTATEMENT (SECOND) OF TORTS § 652B (1977).

In an invasion of privacy claim, "the defendant must *intend* as the result of his conduct that there be an intrusion upon another's solitude or seclusion." *Lougee Conservancy v. CityMortgage, Inc.*, 2012 ME 103, ¶ 19, 48 A.3d 774. Ms. L'Heureux contends that she only intended to document situations that "she felt were problematic." (Pl.'s S.M.F. ¶ 15) The Murphys argue that the sheer volume of the recorded material and the subject matter of the photos and videos make Ms. L'Heureux's claim untenable. (Defs.' O.S.M.F. ¶¶ 15-16.) They point to specific photographs of their children playing outside that seemingly have nothing to do with any dispute between the Murphys and Ms. L'Heureux. (Defs.' A.S.M.F. ¶¶ 23-25.) Because a jury could infer from the volume and

4

types of photographs that Ms. L'Heureux intended something other than simply documenting disputes, the Murphys have raised an issue of material fact on intent.

The second element is whether there was an intrusion. Although the Law Court in *Lougee Conservancy* described this element as a "physical intrusion," it has previously adopted the Restatement's definition of the tort. *Nelson*, 373 A.2d at 1223. The Restatement provides, "one who intentionally intrudes, physically *or otherwise* . . . " can be liable if the other elements of the tort are met. RESTATEMENT (SECOND) OF TORTS § 652B (1977) (emphasis added). Other cases demonstrate that the intrusion need not be "physical." *See, e.g., Hamberger v. Eastman*, 206 A.2d 239, 241 (N.H. 1964) ("The tort of intrusion upon the plaintiff's solitude or seclusion is not limited to a physical invasion of his home or his room or his quarters."). The Murphys have therefore presented evidence that there could be an intrusion in this case.

The third element requires the Murphys to show that Ms. L'Heureux intruded on their "solitude or seclusion." Ms. L'Heureux argues that there is no evidence that she intruded on the Murphys' private or secluded affairs because her videos and photographs primarily record outdoor activities and that any photographs or videos which show the inside of the Murphys' house were taken from a public street. In *Berthiaume's Estate v. Pratt*, the Law Court held that there was a valid claim for invasion of privacy where a dying patient's former doctor photographed the patient in the hospital over his objection. *Berthiaume's Estate v. Pratt*, 365 A.2d 792, 795 (Me. 1976). The Law Court pointed out that the jury in that case could have found that the patient was dying and that "he desired not to be photographed in his hospital bed in such condition." *Id.*

5

In *Davis v. Atlas Agency, Inc.*, the Superior Court considered a case involving a private company hired to conduct surveillance on an employee who was receiving workers' compensation benefits. *Davis v. Atlas Agency, Inc.*, 1997 Me. Super. LEXIS 235, *1 (Aug. 8, 1997). As relevant here, the court in *Davis* found:

> Although the defendant's camera was equipped with a zoom lens and at one point a telephoto lens was attached to the camera, everything revealed by those lens was visible to the naked eye. Plaintiff's case's lack of substance can only be recognized by viewing the videotape. Clearly everything seen by the defendant could have been seen by anyone walking along the sidewalk. When the camera is directed at the interior of the home, the only thing visible is the plaintiff, no intimate glimpses of the interior of her home are apparent.

*Id.* at *4. Because the plaintiff failed to show that the defendant photographed private affairs not visible to the public, the court in *Davis* granted the defendant's motion for summary judgment. *Id.* at *5.

In *Dobson v. Keef*, the Superior Court dismissed a complaint alleging invasion of privacy where the defendant recorded plaintiff's conversations and photographed plaintiff from a public road. *Dobson v. Keef*, 2008 WL 4375969 (Me. Super. July 29, 2008). The court reasoned that "[p]hotographs taken of Plaintiff while he was in his yard and exposed to public scrutiny are not actionable because Plaintiff had not secluded himself from visual scrutiny." *Id.* Similarly in *Muratore v. M/S Scotia Prince*, the court dismissed plaintiff's claim for invasion of privacy where the defendants photographed plaintiff in public areas of a cruise ship. *Muratore v. M/S Scotia Prince*, 845 F. Supp. 471, 483 (D. Me. 1987), *rev'd in part on other grounds*, 845 F.2d 347 (1st Cir. 1987).

The Murphys urge the Court to adopt a broader definition of privacy than the courts in these Maine cases. They rely on *Sanders v. American Broadcasting Companies, Inc.*, 978 P.2d 67 (Cal. 1999). In *Sanders*, an investigative journalist got a job at a

6

telepsychic company and covertly videotaped and recorded conversations she had with her coworkers. *Id.* at 70. The Murphys point to language in *Sanders* explaining that the expectation of privacy does not need to be absolute, and "[t]he mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone." *Id.* at 72.The court held, "a person who lacks a reasonable expectation of complete privacy in a conversation, because it could be seen and overheard by coworkers (but not the general public), may nevertheless have a claim for invasion of privacy by intrusion based on a television reporter's covert videotaping of that conversation." *Id.* at 77. The court emphasized that the workplace was not open to the public and that only other employees could otherwise have overheard the recorded conversations between the plaintiff and the defendant. *Id.*

The holding in *Sanders* does not apply to the facts of this case. *Sanders* concerned the limited expectation of privacy in the workplace. It is reasonable to expect limited privacy in workplace areas where the general public cannot access or view. An employee could reasonably expect that, while other employees might overhear a conversation and tell someone else about it, the news media was not recording workplace conversations. In this case, Ms. L'Heureux videotaped the Murphys in areas where a member of the public could have seen them from a public street.

Like the plaintiffs in *Davis*, *Dobson*, and *Muratore*, the Murphys have failed to produce evidence that Ms. L'Heureux photographed any of their private affairs. The Murphys testified that there might be one video that shows the inside of their house, but neither Mr. Murphy nor Mrs. Murphy testified that the video revealed anything private or intimate. Unlike the defendant in *Berthiaume's Estate*, Ms. L'Heureux did not

7

photograph the Murphys in a sensitive condition or in an area where people normally expect solitude or seclusion. Indeed, all of the photographs in the record depict people or things in the yard or driveway in front of the Murphys' house. Ms. L'Heureux's photographs and videos, while understandably annoying to the Murphys, do not constitute an invasion of privacy. Accordingly, Ms. L'Heureux is entitled to summary judgment on count IV of the counterclaim alleging invasion of privacy.

3. Request for Punitive Damages

Because all counts of the defendants' counterclaim have been dropped or fail as a matter of law, the defendants' request for punitive damages must also be dismissed.

The entry is:

Plaintiff's motion for summary judgment on the Defendants' counterclaim is GRANTED.

Date: October 30, 2013 _____
Joyce A. Wheeler
Justice, Superior Court

Plaintiff-Theodore Irwin Esq
Christopher Dinan Esq
Defendant-James Main Esq

8