STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
PORSC-CV-22-233

MARK HUTCHINS, et al.,

    Plaintiffs,

v.

ERIC SEGEE, et al.,

    Defendants

**ORDER ON MOTIONS
TO DISMISS**

Before the court are three motions:

(1) Defendant Camden National Bank has filed a Motion to Dismiss Count VIII of the First Amended Complaint;

(2) Defendants Eric Segee, Segee Enterprises, Inc.; Segee Enterprises II, Inc.; A.T. Hutchins-Segee, Inc.; and Segee Realty, Inc. have filed a Motion to Dismiss Counts I, IV, and V of First Amended Complaint; and

(3) Defendants Segee Enterprises and Segee Enterprises II have filed a Motion to Dismiss All Counts in the First Amended Complaint.

**Background**

This lawsuit was brought by Plaintiffs Mark Hutchins; Roberta Hutchins; Michael Hutchins; A.T. Hutchins, LLC; A.T.H. Realty, LLC; and Coastal Cremation Services (collectively, "Hutchins Plaintiffs") against Defendants Eric Segee; Segee Enterprises, Inc.; Segee Enterprises II, Inc.; A.T. Hutchins-Segee, Inc.; Segee Realty, LLC; and Camden National Bank (collectively, excluding Camden National Bank, "Segee Defendants").

Plaintiffs allege eight counts: (I) Breach of Purchase and Sale Agreement; (II) Breach of Employment Agreement; (III) Breach of Consulting Agreement; (IV) Default on Line of Credit

Entered on the Docket: 2/8/2023

1

REC'D CUMB CLERKS OFC
FEB 8 '23 PM 12:16

Note and Agreement; (V) Defamation/Breach of Privacy; (VI) Intentional Infliction of Emotional Distress; (VII) Negligent Infliction of Emotional Distress; and (VIII) Declaratory Judgment on Debt Subordination Agreement. Camden National Bank ("CNB") is only a defendant as to Count VIII.

The following facts are drawn from Plaintiffs' First Amended Complaint (or "Complaint"):

The Hutchins family has owned and operated funeral homes in Southern Maine for generations and enjoys a good business reputation as a family. In April 2010, the Hutchins Plaintiffs opened a funeral home at 660 Brighton Avenue in Portland, Maine. In 2020, Mark and Roberta Hutchins, the co-owners of A.T. Hutchins, LLC, started to sell substantially all of the A.T. Hutchins assets to Defendant Eric Segee, co-owner of Dolby, Blaise & Segee funeral home in Westbrook, Maine. As a part of that process, Plaintiffs and Defendants executed fifteen documents on February 17, 2022. The documents were executed at the same time, by the same contracting parties, for the same purpose, and were intended and understood to be one comprehensive agreement.

One of those documents was a Purchase and Sale Agreement ("PSA") (Pls.' Ex. 1) that Plaintiffs Mark and Roberta Hutchins, A.T. Hutchins, A.T.H. Realty, and Coastal Cremation Services entered into with Defendants A.T. Hutchins-Segee, Segee Realty, and Eric Segee. Under the PSA, the Defendant signatories would purchase substantially all of the assets of A.T. Hutchins Funeral and Cremation Services and Coastal Cremation for $3,500,000. The PSA also stated that Plaintiff signatories would enter into an evergreen Employment Agreement with Michael Hutchins, a fixed-term Consulting Agreement with Mark Hutchins, a Promissory Note with A.T. Hutchins for $1,700,000, and a Line of Credit Note for an additional $100,000.

2

The Consulting Agreement (Pls.' Ex. 2) is between Plaintiff Mark Hutchins and Defendant A.T. Hutchins-Segee. It states, "...this Consulting Agreement is entered into as a condition of said purchase of substantially all the operating assets of Seller," and it contemplates Mark Hutchins's availability to assess the operation of the business during a "transitional period," defined as seven years from the date of execution. It states further that the "Company may terminate this Agreement only in the event Consultant breaches this Agreement...." Like the Consulting Agreement, the Employment Agreement (Pls.' Ex. 3) between Michael Hutchins and A.T. Hutchins-Segee states that it is a condition of the business purchase. Under the Employment Agreement, Defendants agreed to employ Michael Hutchins for an annual salary of $54,000, with an annual 2% increase. The Agreement allows for termination by Hutchins after one year, by mutual agreement at any time, or by the company for cause at any time.

In the Line of Credit Note and Agreement ("LCNA") (Pls.' Ex. 4), Plaintiffs Mark and Roberta Hutchins agreed to lend $100,000 to Defendant A.T. Hutchins-Segee as owner financing. The LCNA provides that in the event of default occurring under any of the related documents executed on February 17 the lenders may terminate all further advances and declare outstanding indebtedness due upon default. A Promissory Note (Pls.' Ex. 5) for $1,700,000 was executed by Segee Realty and payable to A.T. Hutchins, as further owner financing.

A Debt Subordination Agreement ("DSA") (Pls.' Ex. 6) for the $1.7 million loan was also executed between A.T. Hutchins, A.T. Realty, Coastal Cremation Services, Mark Hutchins, Roberta Hutchins, and Segee Realty. The DSA was executed in conjunction with and in consideration of the five above agreements, as well as the following agreements, also executed on February 17, 2022: Non-Competition Agreement with Roberta and Mark Hutchins, Mortgage, Second Mortgage, Security Interest, Personal Guaranty of Eric Segee, Corporate Guaranty of

3

Segee Enterprises, Corporate Guaranty of A.T. Hutchins-Segee, Corporate Guaranty of Segee Enterprises,[1] and Corporate Guaranty of Segee Enterprises II.

After the sale, Mark and Michael Hutchins transitioned to working for A.T. Hutchins-Segee. Mark Hutchins had entered into the Consulting Agreement, the $1.7-million Promissory Note and the $100,000 Line of Credit Note and Agreement in order to ensure the business remained reputable and profitable. Without the Consulting and Employment Agreements, the Hutchins Plaintiffs would not have entered into any of the other agreements.

On June 13, 2022, Segee sent an email to Michael Hutchins explaining that staff would seek new employment opportunities if Michael remained in his position. He requested that Michael no longer come to the office but stated that Michael would continue to receive the same salary and benefits. The Segee Defendants then changed the locks and codes to the building and computer systems and informed the Hutchins parties that the police would be called if they entered the business. This prevented Michael and Mark Hutchins from performing under the Employment and Consulting Agreements.

The Segee Defendants then, without basis in law or fact, falsely told employees of A.T. Hutchins-Segee and Segee Enterprises that Mark and Michael Hutchins owned guns and were dangerous to the employees and operations of A.T. Hutchins-Segee and Segee Enterprises. The Segee Defendants also falsely told members of the funeral profession in Maine that Michael Hutchins had been terminated because he was not competent, capable, nor tempered for his job.

The Segee Defendants hired Attorney Adam Taylor and Human Resource Professional Deborah Whitworth to orchestrate a workplace investigation in an effort to create a pretextual justification for the termination of Mark and Michael Hutchins. After the terminations, the

---

[1] "Corporate Guaranty of Segee Enterprises" was listed twice in the Complaint.

4

Hutchins Plaintiffs ceased making further advances under the Line of Credit Note and Agreement and declared the indebtedness immediately due. The Hutchins Plaintiffs argue that by wrongfully terminating Michael and Mark Hutchins, the Segee Defendants breached and defaulted under each other agreement entered into on February 17, 2022.

**Legal Standard**

On a Rule 12(b)(6) motion to dismiss, the court construes the complaint in the light most favorable to the nonmoving party to determine whether the complaint alleges the elements of a cause of action or facts that may justify relief on any legal theory. *Stevens v. Bouchard*, 532 A.2d 1028, 1030 (Me. 1987).

**Discussion**

(1) CNB's Motion to Dismiss

CNB moves to dismiss Count VIII of Plaintiffs' First Amended Complaint, which seeks a declaratory judgment that the Debt Subordination Agreement ("DSA") is null or void, voidable, or unenforceable. Count VIII alleges that Plaintiffs need not perform their obligations under the DSA due to Defendants' failure to complete performance of the other related contracts.[2]

Plaintiff argues that the DSA should be construed together with the other five agreements such that a breach of one agreement could render another agreement void, voidable, or unenforceable.

> The general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument.

---

[2] Plaintiffs' Complaint makes this claim against all Defendants and refers generally to "Defendants" in the claim's allegations. In their Opposition to CNB's Motion to Dismiss, Plaintiffs argue that CNB was not a party to the DSA, and it is undisputed that CNB was not a party to the other contracts. Therefore, it appears that "Defendants" as used in the Count VIII allegations refers to only to the Segee Defendants.

5

*Kandlis v. Huotari*, 678 A.2d 41, 43 (Me. 1996) (quoting 17A Am. Jur. 2d Contracts § 388 (1991)) (citing *Rosenthal v. Means*, 388 A.2d 113 (Me. 1978); *Alden v. Camden Anchor-Rockland Mach. Co.*, 78 A. 977 (Me. 1911)).

As described in more detail below, the Plaintiff has stated a claim that the contracts should be read together with respect to the Plaintiffs and the Hutchins Defendants. With respect to CNB, however, the court need not reach that issue. There is no allegation that CNB has breached any contract, including the DSA. The court was not directed to a reading of any contract where CNB could lose its position as senior lender without a breach by CNB. The court is aware of no theory, and no such theory is alleged, where CNB could lose any of its rights under the DSA as long as the bank meets its obligations under the DSA.

Therefore, the court dismisses Count VIII to the extent it makes allegations against CNB. To the extent Count VIII seeks some type of recovery against the other Defendants, the motion is denied.

(2) Segee Defendants' Motion to Dismiss

Defendants request the court dismiss Counts I, IV, and V. They argue that Plaintiffs' Counts I and IV fail to allege facts indicating the LCNA and PSA should be read together with the Employment and Consulting Agreements. They also argue that Plaintiff's Count V alleges insufficient facts to state a plausible claim for defamation or breach of privacy.

With respect to Counts I and IV, the Plaintiffs rely on the same argument that the six agreements should be construed together. *Kandlis*, 678 A.2d at 43. In *Kandlis*, the Law Court considered an appeal from a grant of summary judgment in favor of Defendant co-guarantors on a claim for contribution regarding a defaulted loan. The Plaintiff and Defendants had all signed identical guaranty contracts to support a loan from Oxford Bank and Trust to Keiser Homes of

6

Maine. The Law Court held the guaranties signed by the Plaintiff and Defendants constituted a single integrated agreement with Oxford Bank. It cited "ample evidence in the record to support the position that all of the guaranties should be read together as part of the same transaction," including evidence that "Oxford's decision to lend money was premised on all of the shareholders and their spouses signing guaranties," and that the guaranties were identical, for the same purpose, signed within a two-week period, and used the phrase "jointly and severally," suggesting that the guaranties be considered as one agreement. *Kandlis*, 678 A.2d at 43.

The Law Court has explained that "[t]he 'question of whether the documents are . . . made part of the same transaction and should be read together . . . is governed by the intent of the parties manifested at the time of contracting and viewed in light of the surrounding circumstances.'" *DiPietro v. Boynton*, 628 A.2d 1019, 1022 (Me. 1993) (citing *Bus. Credit Leasing, Inc. v. City of Biddeford*, 770 F. Supp. 35, 39 (D. Me. 1991)). "Moreover, all writings that form part of, or pertain to, the same transaction should be read together even though the writings are not all between the same parties." *Rosenthal v. Means*, 388 A.2d 113, 115 (Me. 1978).[3] "Extrinsic evidence may be offered to prove that separate writings should be read together as a single transaction." *Hilltop Cmty. Sports Ctr. v. Hoffman*, 2000 ME 130, ¶ 15, 755 A.2d 1058 (citing *Kandlis*, 678 A.2d at 43).

*Count I: Breach of PSA*

Plaintiffs argue that Defendants breached the Employment and Consulting Agreements by terminating Michael and Mark Hutchins's positions with A.T. Hutchins-Segee and that these breaches also constitute breach of the PSA. The Defendants argue that the Employment and

---

[3] This case was decided before *Kandlis*, and the Law Court in *Kandlis* cited to *Rosenthal* as a basis for the rule quoted above. Therefore, this court does not understand *Kandlis* to overrule *Rosenthal* by requiring identical contracting parties. *See also Farina v. A & J Acquisition Co.*, No. RE-02-027, 2003 Me. Super. LEXIS 253, at *7-8 (Dec. 4, 2003).

7

Consulting Agreements themselves show that this claim is untrue because Pls.' Exs. 3 and 4, purporting without objection to be the Employment and Consulting Agreements, each contain an integration clause.

The court notes that while the Employment and Consulting Agreements state they constitute entire agreements, the Employment and Consulting Agreements identify themselves as conditions "of said purchase of substantially all of the operating assets of seller" and the PSA refers to execution of the Employment and Consulting Agreements. Defendants argue that the references to the Employment and Consulting Agreements in the PSA only state that the parties "shall enter" into the agreements and that later breach would not violate that condition. Still, that language does not mean, at this stage of the litigation, that the agreements fail to meet the *Kandlis* standard. Taking the allegations in the Complaint to be true, the court cannot find that the contracts are not intended to be read together. Therefore, it does not find that Plaintiffs fail to state a claim upon which relief can be granted as to Count I, breach of the PSA.

*Count IV: Breach of LCNA*

Defendants argue that the Employment and Consulting Agreements cannot be read together with the LCNA because the LCNA states it is intended to be read in connection with "Related Documents," which term Defendants argue excludes the Employment and Consulting Agreements.

The LCNA defines an event of default as including "any default occurring under any of the related documents executed on February 17, 2022." Related documents is defined as "all promissory notes, security agreements, pledge agreements, mortgages, deeds of trust, and any other documents or agreements executed in connection with this Agreement whether now or hereafter existing...." The court notes that "other documents or agreements executed in

8

connection with" the LCNA is a broad category. According to Plaintiffs' Exhibits and allegations, the LCNA established owner financing for the PSA. Accepting the allegations in the Complaint as true, the court cannot find that the term Related Documents must exclude the Employment and Consulting Agreements. It cannot find that Plaintiffs have failed to state a claim as to Count IV, breach of the LCNA.

*Count V: Defamation and Invasion of Privacy*

The elements of defamation are

(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Rice v. Alley*, 2002 ME 43, ¶¶ 18-19, 791 A.2d 932 (quoting *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991)). A plaintiff does not need to prove "special damages to recover general damages for slander when the falsely spoken words impugn his profession, occupation or official status." *Gautschi v. Maisel*, 565 A.2d 1009, 1011 (Me. 1989) (citing *Farrell v. Kramer*, 193 A.2d 560, 562 (Me. 1963)).

As to Count V, Defendants argue that the defamation allegations do not contain sufficient specificity as to the statements themselves, the time, place, form, and audience. On a motion to dismiss, a "plaintiff's failure to specifically allege the date, month, and year of the publication of the alleged defamatory material is not necessarily fatal." *Vahlsing Christina Corp. v. Stanley*, 487 A.2d 264, 267 (Me. 1985) (citing M.R. Civ. P. 8(a); *Rubin v. Josephson*, 478 A.2d 665, 669 n.4 (Me. 1984)). "Material words, those which are essential to the charge made, must be proved as alleged," but "in relation to unimportant, connecting or descriptive words, some latitude is allowed." *Kimball v. Page*, 52 A. 1010, 1011 (Me. 1902).

9

The court concludes that Plaintiffs have made out the essential elements of defamation. In this case, Plaintiffs allege two incidents of defamation. First, they claim that the Segee Defendants[4] told the employees of A.T. Hutchins-Segee and Segee Enterprises that Mark and Michael Hutchins owned guns and were "actual and credible threats, risks and dangers to the lives or safety of the employees and operations...." Pls.' Compl. ¶ 44. Plaintiffs allege that this statement was false, impugned the Hutchinses' professional characters, and alleged criminal behavior such that damages are presumed. In the second instance, Plaintiffs claim that the Segee Defendants told "third parties," including Anthony Depalmer, Christina Hutchins, Julie Ann Johnson, that Michael Hutchins was terminated, and "further communicated, or implied, that he was neither competent, nor capable, not tempered to perform his job." ¶ 45. Plaintiffs allege this statement was false and unprivileged and that in both incidents, the statements were made maliciously or at least negligently. Finding these allegations sufficient to state a claim for defamation, the court denies the Motion as to the defamation claim in Count V. *See Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1147 (Me. 1983) ("A motion to dismiss a complaint for failure to state a claim should not be granted ... if it avers every essential element of a claim.").

However, the court does agree with Defendants that the invasion of privacy claim should be dismissed for failure to state a claim. The Law Court has recognized four types of invasion of privacy claims: intrusion upon solitude or seclusion, public disclosure of private facts, publicity placing a plaintiff in a false light before the public eye, and appropriation of a name or likeness. *Estate of Berthiaume v. Pratt*, 365 A.2d 792, 795 (Me. 1976). The court finds that the only

---

[4] Defendants argue that to state a claim Plaintiffs must identify which of the Segee Defendants made the defamatory statements concerning the Hutchinses. The court concludes that the claim that the Segee Defendants made the statements is sufficient to endure the Motion to Dismiss.

10

category that could apply here is the first, which Plaintiffs discuss in their Opposition. The Law Court has cited Restatement (Second), Torts § 652B:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*Nelson v. Me. Times*, 373 A.2d 1221, 1223 (Me. 1977); *Estate of Berthiaume*, 365 A.2d at 795.

Plaintiffs allege that Defendants intruded upon Plaintiffs' private affairs by sharing the aforementioned statements. The Law Court has found that an intrusion requires "proof of an actual invasion of 'something secret, secluded or private pertaining to the plaintiff,'" and that when a newspaper published an image of a plaintiff without consent or authorization, there was no intrusion. *Nelson*, 373 A.2d at 1222-1223 (quoting *Estate of Berthiaume*, 365 A.2d at 795). The Restatement clarifies the standard, stating

> The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself ... [or] by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents.

§ 652B, cmt. b. The court does not find any conduct alleged in the Complaint that could qualify as an intrusion. Therefore, the court grants the Motion as to Count V, only insofar as it alleges breach of privacy.

(3) Segee Enterprise Defendants' Motion to Dismiss

Segee Enterprises and Segee Enterprises II ("Segee Enterprise Defendants") request to be dismissed as Defendants. Plaintiffs do not oppose the dismissal of the Segee Enterprise

11

Defendants as parties to this action. The court therefore grants the Segee Enterprise Defendants' Motion to Dismiss.

The entry is:

Defendant Camden National Bank's Motion to Dismiss is GRANTED in that Camden National Bank is dismissed as a Defendant in this case.  To the extent Count VIII states claims against any other Defendants, Count VIII is not dismissed.  Defendants Eric Segee, Segee Enterprises, Segee Enterprises II, A.T. Hutchins-Segee, and Segee Realty's Motion to Dismiss is DENIED IN PART and GRANTED IN PART. The Motion is DENIED as to Counts I and IV. It is also DENIED as to Count V insofar as Count V alleges defamation. It is GRANTED as to Count V insofar as Count V alleges breach of privacy.
Defendants Segee Enterprises and Segee Enterprises II's Motion to Dismiss is GRANTED, and Segee Enterprises and Segee Enterprises II are dismissed as defendants in this case.


The clerk may incorporate this order into the docket by reference. M.R. Civ. P. 79(a).


Date: _____2/8/23_____          _____
                                    Thomas R. McKeon
                                    Justice, Maine Superior Court